Kevin CROWLEY, Petitioner–Appellant,

v.

Harvey WINANS, Respondent–Appellee.

No. 89–1246.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1990.

Decided Dec. 13, 1990.

As Corrected Dec. 26, 1990.

Charles B. Vetzner, Office of the State Public Defender, Madison, Wis., for petitioner-appellant.

Christopher Wren, Asst. Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

Kevin Crowley filed a petition for a writ of habeas corpus challenging his conviction for aggravated battery. The basis for that petition was his claim that the trial court allowed the jury to rely on an unconstitutional presumption. Specifically, Crowley asserted that the presumption in the aggravated battery statute denied him due process because there was no rational connection between the basic fact proven by the state and the ultimate fact presumed. The district court denied the writ of habeas corpus, and Crowley appealed that decision.

The facts at trial, taken in the light most favorable to the state, revealed the following sequence of events. On April 30, 1985, Kevin Crowley stopped at a tavern at which Billy Zinkle was drinking. Crowley told Zinkle to come outside, and that he was going to beat him up. Zinkle refused to leave the bar and Crowley left. As Zinkle was walking home later that night, Crowley came up to him, removed his glasses, and hit him a number of times in the face. Crowley and a friend who was with him then took Zinkle home, gave him something to drink, and put him to bed. Zinkle was ill for a number of days as a result of the beating, and sustained severe contusions and minor abrasions to the forehead and upper face. The record does not include a detailed physical description of Crowley, but he is characterized as a physically healthy, normal-sized eighteen-year-old. Zinkle is described as a slightly retarded forty-eight-year-old person who stands 4'9" tall, weighs 96 pounds, and wears glasses without which he is legally blind.

The jury instruction at issue provides: The fourth element of this offense requires that the defendant's conduct created a high probability of great bodily harm. Under the criminal code great bodily harm means bodily harm which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury. If you find that the victim had a physical disability at the time of the offense and that such disability was discernible by an ordinary person viewing the victim you may find from that fact alone that the defendant's conduct created a high probability of great bodily harm, but you're not required to do so and you must be satisfied beyond a reasonable doubt from all the evidence that the defendant's conduct created a high probability of great bodily harm.

At the trial, the state relied on two alternative methods of proving conduct creating a "high probability of great bodily harm." First, the state introduced evidence regarding the harm actually suffered by the victim, Billy Zinkle, and the type of actions likely to cause that injury. Second, the state relied upon the presumption set forth in the jury instruction above. The state introduced testimony indicating that Zinkle's short stature and his vision problems constituted physical disabilities under the statute.[1] The state supreme court on appeal held that both Zinkle's height and his visual difficulties constituted physical disabilities within the meaning of the statute,

---

1. Petitioner relies on Zinkle's "frailty" as a third basis for the disability determination. The record does not reveal any reliance on frailty as a basis for disability in the trial. Although the Wisconsin Supreme Court mentioned Zinkle's frailty in its opinion, its analysis focused on Zinkle's height and use of eyeglasses. Therefore, frailty has never really been considered a basis for invoking the presumption.

and that determination is not challenged in this petition for a writ of habeas corpus.

Because the state relied upon alternative grounds and we cannot know which ground formed the basis for the conviction, we must address whether the use of the presumption deprived Crowley of due process. The Supreme Court has identified different tests which are designed to ensure that the presumption does not undermine the factfinder's responsibility at trial to find guilt beyond a reasonable doubt based upon evidence adduced by the state. *County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). In this case, all parties agree that the statute incorporates a permissive, rather than a mandatory, presumption.

■ A permissive inference or presumption allows the factfinder to infer the elemental fact from proof by the state of the basic fact, but does not require the factfinder to reach that conclusion and does not shift the burden to the defendant. *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2224. This type of presumption satisfies due process if "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former." *Ulster County,* 442 U.S. at 165, 99 S.Ct. at 2228 (*quoting Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943), and *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969)). In conducting this analysis, the proper focus is on the facts of the individual case, and therefore the question is whether the jury, considering the facts presented in this case, could rationally make the connection allowed in the presumption. *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2224.

■ In the present case, the permissive presumption allowed the jury to infer that the conduct created a high probability of great bodily harm from proof that the victim was physically disabled. The evidence of physical disability presented in this case indicates that Zinkle's short stature and his vision problems could be considered physical disabilities under the statute. We cannot know which of the disabilities the jury relied upon, so we must analyze each of them.[2] The legal blindness, however, clearly provides a rational basis for assuming a high probability of great bodily harm because it significantly impedes the ability of a person to defend himself. Therefore, we need only discuss the rationality of the presumption assuming that the disability is Zinkle's height.

■ The constitutional challenge presented in this petition hinges upon whether the jury could rationally find that proof of Zinkle's height demonstrates a high probability of great bodily harm. At first glance, the connection seems a tenuous one at best. The focus, however, is not whether height usually or even often is a proper basis upon which to infer a likelihood of injury in an attack. Instead, the focus is whether the facts of this case could allow a jury to rationally presume a high probability of great bodily injury based upon Zinkle's height.

For instance, in *Ulster County,* the Court examined a statute which provided that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all occupants of the vehicle. 442 U.S. at 142, 99 S.Ct. at 2217. In upholding that presumption, the Court emphasized that the facts strongly indicated that the person in whose handbag the guns were found did not exercise exclusive dominion over them. 442 U.S. at 163, 99 S.Ct. at 2227. The handbag belonged to a 16–year–old girl, and the Court held that the circumstances indicated that the other occupants of the car—three adult men—had used the girl's handbag in an attempt to hide the guns when the police stopped

---

**2.** While the legal blindness without his glasses is a more obvious disability, the jury could have found that it was not a disability which was readily discernible, and thus not within the statute. The doctor who testified for the state indicated that a person viewing the glasses in a reasonable light could ascertain the thickness, and by inference the seriousness of the vision problem.

them. 442 U.S. at 163–64, 99 S.Ct. at 2227–28. Therefore, the Court did not hold that possession may always be presumed, but rather focused upon the specific facts supporting the inference in that particular case.

 The facts in this case demonstrated that Zinkle was beaten by a person who was taller than he. The connection which must be rational is between the victim's height and the probability that the conduct would cause great bodily harm, which is defined as bodily harm which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury. As with most "physical disabilities" under the Wisconsin statute, the connection appears to depend upon the effect of the disability on the ability to defend one's self. Height would only be relevant if the disparity in height between the victim and attacker was significant. In this case, the Wisconsin Supreme Court declared that Crowley was a "physically healthy, normal sized eighteen-year-old," whereas the victim was a ninety-six pound, 4'9" tall, forty-eight-year-old. *State v. Crowley*, 143 Wis.2d 324, 330, 422 N.W.2d 847, 849 (1988). Those facts indicate that the height disparity was substantial. Moreover, evidence introduced at trial indicated that the blows were struck from above him. The injuries sustained by Zinkle were largely confined to the upper portion of his face and head, with substantial injury at the eyes. Based upon these facts, the jury could rationally infer that Zinkle's height inhibited his ability to defend himself, and increased the ability of the defendant to strike him in the head and face area. That decreased ability to defend himself could result in a high probability of great bodily harm. This reasoning meets the rationality test.

We reject the claim, asserted by appellant at oral argument, that punches thrown by a healthy, normal-sized eighteen-year-old on a person who is four or five feet tall are no more likely to cause injury than punches by that person on someone who stands six or seven feet tall. While the facts of a particular case may vary, common sense tells us that a great disparity in height generally will operate to the disadvantage of the smaller person. The statute allows for any exceptions to that general rule because it provides a permissive, not a mandatory, presumption, and therefore comports with the requirements of the due process clause.

Accordingly, the district court's decision denying the writ of habeas corpus is

Affirmed.