[No. 60308-1.    En Banc.    March 31, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. CRAIG MITCHELL HANNA, *Appellant*.

*Andrew P. Zinner* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Peter Goldman, Deputy*, for respondent.

DOLLIVER, J. — On August 22, 1989, the red Mustang driven by Craig Mitchell Hanna crossed the grass median into opposing traffic and collided with the Toyota occupied by Roy and Frances Fellows. Mr. Fellows was killed and Mrs. Fellows sustained serious injuries. Hanna was convicted of vehicular homicide and vehicular assault in violation of RCW 46.61.520 and RCW 46.61.522. On appeal, Hanna·contends his due process rights were violated by the giving of instruction 9 which allowed the jury to infer Hanna drove in a reckless manner, a predicate act required for his convictions, from evidence that he exceeded the speed limit. Hanna also contends the trial court erred in denying his motions to dismiss for failure to preserve evidence and for case mismanagement.

The facts leading up to the accident were disputed at trial. The State presented testimony from four eyewitnesses who were traveling in the same direction as the defendant: Cheryl Buckel, Robert Parry, William Dechon, and Klaus Ruckedeschel. They testified that prior to the collision Hanna's Mustang and another vehicle, a blue car with Oregon plates, were traveling northbound on Route 599 in south Seattle at approximately 80 to 100 m.p.h. Three eyewitnesses testified Hanna was traveling at this speed while trailing the blue car by only one to three car lengths. Buckel and Ruckedeschel stated the two cars appeared to be "racing" or "chasing" each other.

Buckel, Parry, and Dechon observed the collision. They stated the two cars were speeding in the left lane when they approached a slower moving car. Just prior to passing the slower vehicle, the driver of the blue car tapped the brakes. Hanna's Mustang then came into contact with the blue car and swerved across the median into opposing traffic colliding with the Fellows' Toyota.

The State admitted numerous photos of the accident scene through police witnesses, Captain L. Forrester and Sergeant F. Walser, who described the collision scene and the relative positions of the vehicles. The State also introduced testimony from Detective Scott Beasley, an accident reconstruction expert. Beasley testified that Hanna applied the brakes just before the Mustang entered the median strip. The brakes immediately locked and the car rotated out of control and spun across the median. Beasley used the "conservation of momentum" theory, which measures trajectories and skid marks, to calculate the Mustang's precollision speed. Using this method, Beasley opined the car was traveling 103 m.p.h. before the brakes locked and 47 to 48 m.p.h. at the point of impact.

The defense contended Hanna was not speeding prior to the collision. One eyewitness, Steven Neel, a truck driver stopped along the road about 500 feet from the scene, testified the Mustang and the blue car were going "highway speeds" prior to the collision. The defense also presented

testimony from its own accident reconstruction expert, Kenneth Tharp. Tharp testified the "crush" method, which measures the amount of damage or deformation sustained by each vehicle, is the only accurate way to estimate pre-collision speeds of vehicles in a head-on collision. Tharp stated his ability accurately to estimate Hanna's precollision speed under this method was impaired because the State Patrol failed to preserve the victim's vehicle. Without direct measurements, Tharp used photographs of the victims' vehicle to estimate Hanna's speed at 60 to 64 m.p.h.

The defense also presented evidence supporting an alternate theory of the proximate cause of the accident. Hanna testified he was traveling in the left lane at 75 m.p.h. when the blue car appeared and began to jog left and right in front of him. Hanna then slowed to 60 m.p.h. before the car cut him off and Hanna was forced to hit the brakes and spin onto the median and into opposing traffic.

After the accident, the State Patrol photographed the scene, measured Hanna's skid marks across the median and in the southbound lanes, and impounded Hanna's Mustang. The State Patrol, however, did not measure or photograph the skid marks in the northbound lane or retain the Fellows' Toyota believing neither would be relevant in investigating the collision.

On August 3, 1990, the State charged Hanna with vehicular homicide. The information was later amended to include vehicular assault. The trial date, originally scheduled for November 26, 1990, was extended five times. The extensions were necessary due to late discovery and accommodations necessary to meet the needs of the court, the prosecution, and the defense.

The trial commenced on January 29, 1991. Defense counsel moved for dismissal, alleging the State's failure to preserve the Fellows' vehicle deprived the defendant of evidence critical to his defense. The motion was denied and the trial was continued until February 1, 1991. On February 1, defense counsel moved in the alternative to dismiss or continue the case because the defendant objected to the State's

announced rebuttal witness and because more time was needed to incorporate information provided by the State. The court granted the continuance to February 6, 1991. On February 5, 1991, the State moved for a further continuance because an eyewitness would be unavailable beginning February 7. The case was continued to March 11, 1991, to accommodate the schedules of witnesses and counsel.

Prior to the March 11 trial date, the defendant filed another motion to dismiss based on late discovery. The court denied the motion because the defendant had not been prejudiced. The trial resumed on March 11, 1991. At the close of the State's case, the defendant renewed his motion to dismiss for late discovery. The court denied the motion because the State had adequately answered the defendant's discovery requests.

In its charge to the jury, the court, without objection from Hanna, gave instruction 9 which permitted the jury to infer that Hanna drove in a reckless manner, an element of vehicular homicide and vehicular assault, from the fact that he drove in excess of the lawful speed. The jury returned a special verdict finding Hanna drove in a reckless manner and convicted him on both counts.

Hanna appealed to Division One of the Court of Appeals and moved to transfer the case to this court pursuant to RAP 4.3. On August 11, 1991, the commissioner granted the motion to transfer.

I

On appeal, Hanna contends his due process rights were violated by the use of instruction 9, which provides:

> A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.
>
> This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

See WPIC 95.03. Constitutional challenges may be raised for the first time on appeal. RAP 2.5(a). Hanna's due process challenge is limited to that under the fourteenth amendment to the United States Constitution. Therefore,

we address this challenge only under the federal due process clause.

■ Due process requires the State bear the "burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985); *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The State may, however, use evidentiary devices, such as inferences and presumptions, to assist in meeting its burden of proof. A mandatory presumption instructs the jury that it "*must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *County Court of Ulster Cy. v. Allen*, 442 U.S. 140, 157, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). The constitutionality of a mandatory presumption is evaluated in light of the jury charge read as a whole to ensure it does not shift the burden of persuasion on any element of the offense. *Francis*, 471 U.S. at 314, 325.

■ A permissive inference or presumption permits, but does not require, the jury to infer an element of the offense, an "elemental" or "presumed" fact, from an "evidentiary" or "proved" fact. *See State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989) (citing *Ulster*, 442 U.S. at 157). Permissive inferences do not relieve the State of its burden of persuasion because the State must still convince the jury the suggested conclusion should be inferred from the basic facts proved. *See Francis*, 471 U.S. at 314.

■ When an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow "more likely than not" from proof of the basic fact. *Ulster*, 442 U.S. at 165, 167. As explained by the Supreme Court:

> [There is a] distinction between a permissive presumption on which the prosecution is entitled to rely as one not necessarily sufficient part of its proof and a mandatory presumption which the jury must accept even if it is the sole evidence of an element of the offense.

In the latter situation, since the prosecution bears the burden of establishing guilt, it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. But in the former situation, the prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard. There is no more reason to require a permissive statutory presumption to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted. . . .

(Footnote omitted.) *Ulster*, 442 U.S. at 166-67.

█ There remains a question whether the "more likely than not" standard applies when the prosecution relies on an inference as the sole evidence of an element of an offense. The Supreme Court appears to suggest the more stringent reasonable doubt standard may apply when the inference is the "sole and sufficient basis for a finding of guilt". *Ulster*, 442 U.S. at 167. Division Two of the Court of Appeals has so held. *See State v. Delmarter*, 68 Wn. App. 770, 784-85, 845 P.2d 1340 (1993). We need not address this issue, however, because under the facts presented and the jury charge read as a whole, we find the inference in this case was not the "sole and sufficient" basis for a finding of guilt.

█ The jury was consistently instructed to consider all the evidence before determining whether Hanna drove in a reckless manner. Instruction 1 stated: "In determining whether any proposition has been proved, you should consider all of the evidence introduced by all parties bearing on the question." Instruction 8, which described the elements of vehicular homicide, reminded the jury to "weigh[ ] all of the evidence" before determining whether each element was proved beyond a reasonable doubt. This language was repeated in instruction 13 for vehicular assault. The jury was also instructed to "consider the instructions as a whole and . . . not place undue emphasis on any particular instruction or part thereof." Instruction 1. Juries are presumed to heed the court's instructions. *See State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991), *cert. denied*, 121 L. Ed. 2d 112 (1992).

The record establishes the State did not rely on the inference as its sole evidence supporting the element of reckless driving. The prosecution introduced eyewitness and expert testimony that Hanna was traveling at approximately 80 to 100 m.p.h. prior to the collision. It also presented eyewitness testimony that Hanna was trailing the blue car in the left lane by only one to three car lengths and the two cars appeared to be "racing" or "chasing" each other. In addition, there was light to medium traffic on the highway in both directions during the incident.

We believe a reasonable juror could and would interpret instruction 9 in conjunction with instructions 1, 8, and 13 and consider all the facts before deciding to accept the inference. *Ulster*, 442 U.S. at 162. Therefore, we review the constitutionality of the inference in instruction 9 under the "more likely than not" standard.

Whether an inference meets this standard must be determined on a case-by-case basis in light of the particular evidence presented to the jury in each case. *See Ulster*, 442 U.S. at 162-63, 165; *Francis*, 471 U.S. at 314-15. *See also Schwendeman v. Wallenstein*, 971 F.2d 313, 316 (9th Cir. 1992), *cert. denied*, 122 L. Ed. 2d 130 (1993); *Crowley v. Winans*, 920 F.2d 454, 456 (7th Cir. 1990); *Davis v. Maynard*, 869 F.2d 1401, 1405 (10th Cir. 1989), *vacated and remanded sub nom. Saffle v. Davis*, 494 U.S. 1050, *reinstated in part*, 911 F.2d 415 (1990); *United States v. Roberts*, 844 F.2d 537 (8th Cir. 1988); *McCandless v. Beyer*, 835 F.2d 58, 60 (3d Cir. 1987).

In evaluating whether the facts support the inference, we disagree that every version of the facts must be so examined. *See Delmarter*, 68 Wn. App. at 787-89. Here, the inference is a part of the prosecution's evidence. If the prosecution introduces facts which support the inference to the degree required by due process, it is entitled to an inference instruction. In that event, it is irrelevant whether the defendant's version of the facts also supports the inference. To the extent the jury gives more weight to the defend-

ant's version of the facts, it is capable and free to reject the inference. *See Ulster*, 442 U.S. at 162 n.23.

Here, the State introduced eyewitness and expert testimony indicating the defendant was traveling at approximately 80 to 100 m.p.h. following closely behind another speeding vehicle on a highway with traffic going in both directions. After reviewing the facts, it is with substantial assurance that we find the presumed fact of reckless driving more likely than not flows from the proved fact of Hanna's excessive speed. *See Ulster*, 442 U.S. at 166 n.28.

## II

Hanna also contends the trial court erred in denying his motion to dismiss based on the State's failure to preserve certain evidence. The State Patrol did not photograph or measure the skid marks in the northbound lane or preserve the victims' vehicle. Hanna contends the lack of this evidence affected the defense's ability to use the "crush" method to establish that Hanna was not speeding prior to the collision and to show the proximate cause of the accident was due to an impact with the blue car which veered in front of Hanna forcing him to skid across the median.

The law governing destruction of evidence cases is not settled in Washington. *See State v. Ortiz*, 119 Wn.2d 294, 831 P.2d 1060 (1992). This court is split as to whether the standard set forth in *Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988), or that enunciated in *State v. Vaster*, 99 Wn.2d 44, 659 P.2d 528 (1983), is controlling.

■ In *Youngblood*, the Supreme Court held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. In *Vaster*, we articulated a 2-part balancing test. "[A] court should first consider whether there exists a *reasonable possibility* that the missing evidence would have affected the defendant's ability to present a defense." *Vaster*, 99 Wn.2d at 52. The defendant bears the burden of estab-

lishing that reasonable possibility. *Vaster*, 99 Wn.2d at 52. Then, "the court must balance the consideration of 'reasonableness' against the ability of the prosecution to have preserved the evidence." *Vaster*, 99 Wn.2d at 52.

We decline to adopt either standard in this case because the trial court's denial of Hanna's motion to dismiss would be affirmed under either approach.

Under *Youngblood*, Hanna fails to establish the State Patrol acted in bad faith by not measuring or photographing the skid marks in the northbound lane or retaining the victims' vehicle. The State Patrol's decisions not to preserve and retain the evidence may have reflected poor judgment, but the record establishes those decisions were based on a reasonable belief the evidence would not be relevant to either party.

Under *Vaster*, Hanna fails to meet his burden to establish a reasonable possibility the missing evidence affected his ability to present a defense.

The possibility is remote the missing evidence would have affected the speed estimates presented to the jury. The defense's expert, Kenneth Tharp, testified that for Hanna to have been traveling within the speed limit, the State Patrol's estimates of the crush damage would have to be significantly in error and its measurements of Hanna's skid marks, found to be 323 feet, would have to be off by 50 percent. In addition, even without the missing data, Tharp was able to estimate Hanna's speed at 60 to 64 m.p.h. based on photographs taken of the victim's vehicle. Tharp also testified that in partial head-on collisions, like the accident at issue in this case, both the "crush" method and the "conservation of momentum" method, used by the State, could be used to estimate precollision speeds. Based on the available collision data and the eyewitness testimony that Hanna was traveling "highway speed", we do not find a reasonable possibility that the missing evidence affected the defendant's ability to present a defense on this issue.

Hanna has also not met his burden of establishing a reasonable possibility the lack of photographs or measure-

ments of the skid marks in the northbound lane affected his ability to argue the blue car was the proximate cause of the accident. Given the testimony on Hanna's excessive speed, we do not believe the missing skid mark evidence would have bolstered this theory. In addition, the defense was still able to present its proximate cause theory through eyewitness testimony that Hanna's car came into contact with the blue car immediately prior to skidding onto the median.

Under *Youngblood* or *Vaster*, we hold the defendant's due process rights were not violated and affirm the trial court's denial of the defendant's motion to dismiss for failure to preserve evidence.

### III

■ ■ Lastly, Hanna contends the trial court erred in denying the motion to dismiss for case mismanagement pursuant to CrR 8.3(b). That rule gives the court discretion to dismiss any criminal prosecution, after notice and a hearing, "in the furtherance of justice". The denial of a motion to dismiss under this rule is reviewed under the manifest abuse of discretion standard. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). Dismissals are an extraordinary remedy available only when there is arbitrary prosecutorial action or governmental misconduct, including mismanagement, that prejudices the defendants and materially affects their right to a fair trial. *See Blackwell*, 120 Wn.2d at 830-31; *Seattle v. Orwick*, 113 Wn.2d 823, 832, 784 P.2d 161 (1989).

The defense likens this case to that in *State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990), wherein the Court of Appeals affirmed the trial court's dismissal of a criminal prosecution under CrR 8.3(b). We decline to draw this parallel. In *Sherman*, the State failed to comply with an omnibus order directing it to provide the defendant with a witness list and certain discovery materials at least 2 weeks before trial. *Sherman*, 59 Wn. App. at 765. The State attempted to expand its witness list on the day of trial and filed an amended information and a motion to reconsider a

discovery order after the scheduled trial date. *Sherman*, 59 Wn. App. at 766. In addition, the speedy trial expiration date had been continued seven times and was set to expire again on the date the case was dismissed. *Sherman*, 59 Wn. App. at 769.

Here, Hanna received all the requested discovery prior to the commencement of the trial. In addition, the trial court found the defense was partially to blame for the delays because it was not diligent in gleaning the requested information from discovery materials already provided by the State. Moreover, the record shows the trial was delayed to accommodate the needs of the defendant as well as the prosecution and the court.

Although our scrutiny of the record indicates the presence of delays and discovery problems, the defendant contributed to the situation and the trial court's efforts prevented any mismanagement from prejudicing the defendant.

We hold instruction 9 is constitutional under the facts and instructions presented to the jury in this case, and we affirm the trial court's denial of the motions to dismiss.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, SMITH, and MADSEN, JJ., concur.

JOHNSON, J. (dissenting) — Today's holding reduces a significant constitutional question to a determination whether there was sufficient evidence to convict. The issue before this court is whether jury instruction 9 violated Hanna's right to due process under the Fourteenth Amendment by permitting the jury to infer the element of reckless driving simply from evidence Hanna drove in excess of the speed limit. The majority upholds the constitutionality of instruction 9 on a finding the evidence of speed *in addition* to other evidence of recklessness supported the reckless driving element. This is not the proper inquiry. Because instruction 9 permits the jury to satisfy the recklessness element solely from a finding of excess speed, the constitutionality of this

inference must also be determined without reference to other evidence of recklessness. The majority has merely established there was sufficient evidence to convict — a contention not at issue in this case.

Unlike the majority, I cannot say with substantial assurance that an inference of reckless driving flows more likely than not from evidence of excessive speed. The jury instruction permitted the jury to infer Hanna drove recklessly solely by finding he was speeding. Today's holding effectively gives jurors license to impose substantial criminal sanctions on speeders. Surely this cannot comport with our notions of fundamental fairness. Because I believe this instruction is constitutionally defective, I dissent.

At issue in this case is a pattern jury instruction creating a permissive inference, which allowed, but did not require, the jury to infer recklessness solely from proof of excessive speed. Instruction 9 provided:

> A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.
>
> This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Inferences are evidentiary devices which help the prosecution establish the elements of the crime charged. As the majority correctly suggests, an inference may not lessen or shift the prosecution's burden of proof on any element. Majority, at 710. Inferences are further limited by principles of due process. There must be a rational connection between the underlying fact and the inferred fact. *See Tot v. United States*, 319 U.S. 463, 467-68, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943). The standard by which the rational connection is measured depends, in part, on the degree to which the prosecution is relying on the inference to establish an element of the crime. When, as here, the inference is only part of the prosecution's proof supporting an element of a crime, the rational connection between the proved fact and the inferred fact is established if the inferred fact flows "more likely than not" from the proved fact. *County Court of Ulster*

*Cy. v. Allen*, 442 U.S. 140, 165, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979).

Applying the rational connection test to jury instruction 9, the question is whether the fact of reckless driving flows more likely than not from proof a defendant was speeding. Or phrased another way, can we say with reasonable assurance that one who speeds also drives in a rash or heedless manner, indifferent to the consequences? Common experience tells us the answer to this question is no. Excess speed alone is only determinative of speeding — violating the posted speed limit. Yet as it is currently phrased, instruction 9 could be used to uphold joint issuance of reckless driving citations and speeding tickets. While I concede excessive speed may, in some circumstances, contribute to recklessness, and evidence of speeding is probative on this issue, I cannot conclude speed alone more likely than not establishes the element of reckless driving. The rational connection between the proved fact and the inferred fact required by due process is simply not present.

In *Schwendeman v. Wallenstein*, 971 F.2d 313 (9th Cir. 1992), *cert. denied*, ____ U.S. ____, 122 L. Ed. 2d 130, 113 S. Ct. 975 (1993), the Ninth Circuit reviewed an identical jury instruction on habeas corpus petition, and likewise concluded the instruction was unconstitutional. While not binding on this court, the Ninth Circuit's interpretation of federal constitutional law is persuasive authority. In *Schwendeman*, the petitioner had been convicted of vehicular assault in Washington and he challenged the constitutionality of the inference instruction. The Ninth Circuit noted there was "plenty of evidence to support Schwendeman's conviction". *Schwendeman*, at 314. "Schwendeman was driving an open-bed truck with passengers in the back at night down a road with potholes, swerving from side to side and exceeding the speed limit." *Schwendeman*, at 316.

However, after analyzing the specific language of the instruction, the court determined the instruction "isolated speed as the only circumstance needed to permit the jury to find reckless driving", concluded it could not "say with sub-

stantial assurance that the inferred fact of reckless driving more likely than not flowed from the proved fact of excessive speed", and held the instruction was constitutionally defective. *Schwendeman*, at 316. The court then concluded the error could not be excused as harmless because it could not exclude the possibility that the instruction materially affected the verdict. *Schwendeman*, at 316.

Like the *Schwendeman* court, I do not contest the sufficiency of evidence in this case. The evidence against Hanna was substantial. There was testimony Hanna was driving erratically, tailgating, and "drag racing" another speeding vehicle on a highway with traffic going in both directions. However, we are not reviewing the sufficiency of this evidence. We are instead reviewing the constitutionality of a permissive inference, which limits the scope of evidential facts to speed alone. Evidence that Hanna was traveling somewhere between 10 and 40 m.p.h. over the speed limit does not more likely than not demonstrate Hanna was driving recklessly.

When determining the constitutionality of a jury instruction, we must review the instruction in the same manner as a reasonable juror could have interpreted the charge. *Sandstrom v. Montana*, 442 U.S. 510, 514, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). "To determine how a reasonable juror could interpret an instruction, we 'must focus initially on the specific language challenged'. . . . If the specific instruction fails constitutional muster, we then review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *California v. Brown*, 479 U.S. 538, 541, 93 L. Ed. 2d 934, 107 S. Ct. 837 (1987) (quoting *Francis v. Franklin*, 471 U.S. 307, 315, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985)).

Here, instruction 9 fails because it isolates speed as the only circumstance required to permit a reasonable juror to find the element of reckless driving. Because we have no way of knowing whether the jury reached its verdict by equating speeding with recklessness, as it was permitted to do under instruction 9, we must analyze the instruction as

if it did. *See Sandstrom*, at 515. Instructions 1, 8, and 13 directed the jury to consider all the evidence and to consider the instructions as a whole. However, these instructions do not conflict with or negate the effect of instruction 9. Under the instructions taken as a whole, a reasonable juror was entitled to satisfy the element of recklessness with all the evidence available *or* with the evidence Hanna was speeding. Thus, instruction 9 yields an unconstitutional result that the remaining instructions failed to cure.

I would hold jury instruction 9 violated Hanna's due process rights. I cannot say with substantial assurance that an inference of reckless driving flows more likely than not from evidence of excessive speed. Because we cannot determine how the jury reached its result, the error cannot be harmless. As a result, I would reverse Hanna's convictions and remand for a new trial.

UTTER and GUY, JJ., concur with JOHNSON, J.

Reconsideration denied May 19, 1994.