IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80195-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDALL MACHETA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Randall Macheta challenges a jury verdict for residential burglary. He contends the trial court erred by failing to give a Petrich[1] unanimity instruction, giving a permissive presumption of intent instruction, and refusing to bifurcate the jury's consideration of the aggravating factor. He also argues that prosecutorial misconduct deprived him of a fair trial. These arguments are not persuasive. We agree that the judgment and sentence should be amended on remand to reflect that Macheta's Social Security benefits may not be used to satisfy his legal financial obligations. In all other respects, we affirm.

FACTS

On the morning of July 30, 2018, Kenneth Schellhase was watching television in the living room of his Renton home. Schellhase's wife had gone to

---

[1] State v. Petrich, 101 Wn.2d 566, 571, 683 P.2d 173, 178 (1984), abrogated by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

work, having left the front doorknob locked but the deadbolt unlocked. All of a sudden, a strange man walked into the room and said, "I don't know if you remember me or not. My dad used to work with your dad."[2] Shocked, Schellhase told the man to get out of his house. The man left.

Schellhase got dressed and headed to his truck to go look for the man, later identified as Randall Macheta. As he was shutting the front door, he noticed that the doorknob was "all twisted."[3] He was unable to lock the doorknob and had to use the deadbolt. When he got into his truck, he noticed that it was in disarray. A pile of folded blankets were disturbed, the contents of the glove box had been rifled through, and two packages of cigarettes were missing.

After driving around the block and not finding the man, Schellhase told his next-door neighbors what had happened. When he arrived home, he noticed that the latch to his garage door had been pried off and the door was ajar. Schellhase "could tell that somebody had been in there."[4]

Schellhase went into the house and, as he did, he heard someone knocking on the door. Schellhase opened the door and saw Macheta again. This time, Macheta did not enter the house. He said, "I heard you were looking for me."[5] Schellhase confronted Macheta about breaking into his truck, and Macheta gave Schellhase his cigarettes back. According to Schellhase, Macheta said something

---

[2] Report of Proceedings (RP) (June 11, 2019) at 214.

[3] Id. at 220.

[4] Id. at 223.

[5] Id. at 222.

like, "[T]his isn't me. I don't know why I did this."[6] Again, Schellhase told Macheta to leave, which Macheta did. Schellhase and a neighbor followed Macheta as Schellhase called the police.

Macheta waited patiently with Schellhase for the police to arrive, at which point, he was arrested. Macheta admitted to the arresting officer that he entered Schellhase's house and that he had pried his way inside.[7] The officer asked Macheta if "he knew the people whose house that he was in, or if the house was random to him."[8] Macheta "replied that it was random."[9]

The State charged Macheta with one count of residential burglary. The State also alleged as an aggravating factor that the victim was present at the time of the crime. A jury convicted Macheta as charged and returned a special verdict on the aggravating factor. Macheta appeals.

## DISCUSSION

### 1. Jury Unanimity

At trial, Macheta proposed a Petrich instruction, arguing the State had offered evidence of multiple entries onto Schellhase's property, including the house, the garage, and the truck. The State told the court that it planned to argue only Macheta's entry into the house constituted residential burglary. Based on the

---

[6] Id. at 223.

[7] According to the arresting officer, Macheta "later clarified he was in someone's garage." Id. at 245.

[8] Id.

[9] Id.

State's representation, the trial court declined to give the instruction. Macheta argues that the failure to give the instruction deprived him of his right to a unanimous jury verdict. We conclude that there was no unanimity violation because the State presented evidence of only one act of residential burglary.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant has a right to a unanimous jury verdict.[10] When the State presents evidence of several distinct acts that could constitute a charged crime, the jury must agree unanimously on which act constituted the crime.[11] Either the State must elect the act it relies on or the court must instruct the jury to agree unanimously as to what act or acts the State proved beyond a reasonable doubt.[12] As long as the election clearly identifies the particular acts on which charges are based, verbally informing the jury of the election during closing argument is sufficient.[13] Failure to do so is constitutional error because of "the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction."[14]

---

[10] State v. Fisher, 165 Wn.2d 727, 755, 202 P.3d 937 (2009) (citing State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)).

[11] Kitchen, 110 Wn.2d at 411.

[12] Id.

[13] State v. Carson, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015).

[14] Kitchen, 110 Wn.2d at 411.

A person commits residential burglary when he or she "enters or remains unlawfully in a dwelling other than a vehicle" with the intent to commit a crime against a person or property therein.[15]  A "dwelling" is "any building or structure, though movable or temporary, or a portion thereof, which is used or ordinarily used by a person for lodging."[16]  For the purposes of residential burglary, courts have generally only interpreted a garage as a "portion" of a dwelling when the garage is attached to the dwelling.[17]

The trial court instructed the jury on the elements of residential burglary as follows:

> To convict the defendant of the crime of residential burglary, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about July 30, 2018, the defendant unlawfully entered or remained unlawfully in a dwelling;
>
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
>
> (3) That this act occurred in the [s]tate of Washington.[18]

In closing argument, the State explained how Macheta's entry into Schellhase's house was an unlawful entry into a dwelling, thereby satisfying the first element.  In doing so, the State discussed only the entry into the house:

> I don't think that there are going to be disputes about some of these requirements.  There is no question that this occurred on July

---

[15] RCW 9A.52.025(1).

[16] RCW 9A.04.110(7).

[17] See, e.g., State v. Murbach, 68 Wn. App. 509, 513, 843 P.2d 551 (1993).

[18] Clerk's Papers (CP) at 77.

30th, 2018.  You heard from Mr. Schellhase.  He testified about the events on July 30th, 2018.  You heard from Officer Elliott and Sergeant Morgan of the Renton Police Department, how they responded on July 30th and investigated this incident.

I also don't think there will be much dispute about whether this was a dwelling.  This is where Mr. Schellhase lived.  You heard that he lives there with his wife.  He lived there for the last ten years.  In fact, he was just waking up that morning.

Furthermore, I don't believe there will be much dispute about whether it was the defendant that entered the home.  You heard from Mr. Schellhase on the stand. He identified Mr. Macheta as the person who walked into his living room.

Next, I don't think that there will be too much dispute about whether he, in fact, entered into the dwelling.  Mr. Schellhase testified about the two doors at his residence.  There is the—I guess the door to get into what he described as the sunroom, and then the secondary to getting to more of the living room.  He testified that Mr. Macheta came through that second door, and he came face-to-face with Mr. Macheta in the living area of his home.  In addition, he testified that Mr. Macheta came approximately ten feet into the home.

Finally, with that first element, the State must prove beyond a reasonable doubt the entry into the home was unlawful.

From the State's perspective, it is clear.  Mr. Schellhase testified that he didn't know Mr. Macheta.  Mr. Macheta didn't have permission to be in his home.  Mr. Schellhase was shocked when Mr. Macheta entered his home.  That Mr. Schellhase told Mr. Macheta to leave; in fact, pushed him out of the residence or out towards the exit.  He also testified that his doorknob had been locked that morning and that the door had been pried open.  Beyond that, he told his neighbor that someone had broken into his house and called 9-1-1 to report the burglary.  Ladies and gentlemen, this was clearly an unlawful entry.[19]

---

[19] RP (June 12, 2019) at 329-30.

The State then proceeded to discuss the second element of whether Macheta entered the house with intent to commit a crime. In doing so, the State discussed Macheta's entry into the truck and the garage. But it did so only for the purpose of showing that Macheta entered the house with intent to steal property:

> First, look at the actions of Mr. Macheta on that day and look at the surrounding circumstances. Mr. Macheta forced entry into Mr. Schellhase's home. The exterior doorknob had been locked. The door had been pried open. There was damage to the doorknob. The door was cracked. In addition to the damage to the front of the house, there was also damage to the detached garage. The lock had been pried open. This was all new damage. It hadn't been there the day before.
>
> Next, you have Mr. Schellhase's truck that was out in the driveway. It had been entered. His property had been moved around. Cigarettes had been taken. Well, who had the cigarettes? It was Mr. Macheta. When Mr. Macheta returned to Mr. Schellhase's property, Mr. Schellhase testified that he said something along the lines of "I see you have been in my car." What did Mr. Macheta do? Hand his cigarettes that were taken from Mr. Schellhase's truck back to Mr. Schellhase.
>
> Ladies and gentlemen, when someone enters a car to steal another person's property, what do you think that person will do when they try to pry their way into a house? Steal.
>
> . . . .
>
> Ladies and gentlemen, this case is not about whether Mr. Macheta is a good person or a bad person. It's about whether he burglarized Mr. Schellhase's home on July 30th, 2018. On that date, he entered the victim's home with the intent to steal. There was forced entry. The garage had been pried open and items ha[d] been removed. The victim's truck had been rummaged through and cigarettes were taken from the visor area of the truck. Mr. Macheta had those cigarettes.[20]

---

[20] Id. at 331-36.

The State also told the jury that if they found Macheta guilty, they should find the existence of the aggravating factor. Again, the State discussed only the entry into the house as the basis for residential burglary:

Now, if you find the defendant guilty of residential burglary, there is a second question that you will answer. That is whether the victim was present in the residence when the crime was committed. Simple. Yes.

You heard testimony from Mr. Schellhase. I don't like to sound like a broken record. He had just gotten up that morning. He was in his underwear getting ready to take a shower when a male unknown to him, Mr. Macheta, entered his house. He came face-to-face with Mr. Macheta in his own home. He was certainly present when the burglary occurred.[21]

A unanimity instruction or an election is required only when the State presents evidence of multiple acts that could each constitute the charged crime. Here, the State presented evidence of only one act that could constitute residential burglary: Macheta's entry into the house. Macheta's entry into the garage did not constitute residential burglary because the garage was detached and not a portion of the dwelling. And Macheta's entry into the truck was not residential burglary because a vehicle is not a dwelling for the purposes of the residential burglary statute. Because the State did not present evidence of multiple acts constituting residential burglary, neither a unanimity instruction nor an election was required.

Even if we agreed with Macheta that an election was necessary, the State's closing argument constituted a clear election. In discussing the elements of residential burglary, the State focused only on Macheta's entry into the house.

---

[21] Id. at 334-35.

The State told the jury that it could consider Macheta's entry into the garage and truck as evidence of his intent to commit residential burglary but did not argue that they constituted additional acts of residential burglary. Macheta fails to establish that the lack of a unanimity instruction violated his right to a unanimous jury verdict.

2. Inferred Intent Instruction

Macheta next contends the trial court violated his right to due process by giving, over his objection, a pattern instruction allowing the jury to infer from his unlawful entry that he intended to commit a crime. We conclude there was no due process violation because the statutory inference was only part of the State's proof of intent.

The State proposed an instruction based on Washington Pattern Instruction (WPIC) 60.05, which provided as follows:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.[22]

Macheta objected. The trial court gave the instruction, finding that "there is circumstantial evidence of intent, which includes the doorknob, the other evidence relating to the events surrounding the incident."[23]

---

[22] CP at 81.
[23] RP (June 12, 2019) at 273-74.

Due process requires that the State prove each element of a crime beyond a reasonable doubt.[24] However, the State may rely on evidentiary devices such as presumptions and inferences to meet this burden of proof.[25] When a permissive inference is the "sole and sufficient" proof of an element, the presumed fact must flow beyond a reasonable doubt from the proven fact, so that the prosecution does not "circumvent its burden of persuasion."[26] But where the inference is only part of the State's proof, the presumed fact must flow more likely than not from a proven fact.[27]

RCW 9A.52.040 allows the jury to consider an inference of criminal intent for burglary:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

Macheta argues that the instruction was improper because there was insufficient evidence to support the inference. He contends this case is similar to State v. Sandoval.[28] In Sandoval, the defendant got drunk, kicked open the door of a stranger's home, and entered. The owner said, "What are you doing in my

---

[24] State v. Hanna, 123 Wn.2d 704, 710, 871 P.2d 135 (1994).

[25] Id.

[26] State v. Brunson, 128 Wn.2d 98, 107, 905 P.2d 346 (1995).

[27] Id. (quoting Hanna, 123 Wn.2d at 710).

[28] 123 Wn. App. 1, 94 P.3d 323 (2004).

house?" and the defendant responded by saying, "Who are you?" and shoved the owner.[29]  The State charged the defendant with first degree burglary, and the trial court gave a permissive inference instruction.  Division Three of this court concluded the evidence did not support a logical inference that the defendant entered with the intent to commit a crime.  It relied on the fact that the defendant "did not try to take any of [the owner's] property or confess to doing so," as well as the fact that testimony showed the defendant had a history of kicking in his own apartment door when drunk.[30]

Here, contrary to Macheta's claim, the statutory inference was not the sole proof of intent.  Macheta pried open the lock to both the house and the garage.  And Macheta entered the truck, rifled through Schellhase's possessions, and took two packs of cigarettes.  Unlike Sandoval, there was no evidence that Macheta entered the house because he was confused or under the influence.  Because Macheta's intent to commit a crime flowed more likely than not from the facts surrounding his unlawful entry, the trial court did not err in giving the inference instruction.

3.  Bifurcation of Aggravating Factor

Macheta next argues the trial court's refusal to bifurcate the jury's consideration of the aggravating factor from the underlying crime deprived him of a fair trial.  We disagree.

---

[29] Id. at 3.

[30] Id. at 6.

The State alleged as an aggravating factor, pursuant to RCW 9.94A.535(3)(u), that "the current offense is a burglary and the victim of the burglary was present in the building or residence when the crime was committed."[31]  The State proposed, and the trial court gave, jury instruction 19, which stated:

> If you find the defendant guilty of [r]esidential [b]urglary, then you must determine if the following aggravating circumstance exist:
>
> Whether the victim of the burglary was present in the building or residence when the crime was committed.[32]

Macheta moved to bifurcate the jury instructions so that the jury would only be instructed on the aggravating factor if it returned a guilty verdict.  He argued that the instruction was prejudicial because its use of the words "victim" and "the burglary" presupposed his guilt as to the burglary.

The trial court denied the request.  It concluded that the instructions adequately informed the jury that they could not consider the aggravating factor unless they found Macheta guilty.  And it noted that Macheta's position would require bifurcation in any case involving an aggravating factor, which was inconsistent with the statutory language governing aggravating factors:

> As I noted, under RCW 9.94A.537(4), it creates a statutory presumption that the jury will generally consider aggravating circumstances at the same time that it deliberates on the question of guilt, and the argument from counsel in this case is that the use of the phrase or the word "victim" focuses the jury on the question and presupposes guilt.

---

[31] CP at 33.

[32] CP at 88.

12

The court is not convinced that there needs to be instructional bifurcation in this case because, if the court were to accept that argument, every case there would be where there is an aggravator that uses that phrase or even an argument about an aggravator, there would be grounds by which to bifurcate the instructions and the trial, essentially because there would have to be a second phase of either evidence or additional argument that would need to be made. I think that is not what the legislature intended with the presumption in favor of unitary trials.

And the court would also add that any potential prejudice can be cured by utilizing instructions which make clear, one, that the aggravating factor needs to be found beyond a reasonable doubt. The jury should only consider it if they determine that, once they have already established guilt, and the jury is presumed to follow the instruction[s], to read the instructions, to understand the instructions. So based on all of that, the court will deny the request for an instructional bifurcation in this case.[33]

Macheta claims that he was entitled to bifurcation because RCW 9.94A.537(4) requires a separate proceeding for certain aggravating factors when "the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime." But RCW 9.94.537(4) identifies only specific aggravating factors that may be bifurcated from the proceeding and does not include RCW 9.94A.535(3)(u).[34]

---

[33] RP (June 11, 2019) at 102-03.

[34] RCW 9.94A.537(4) provides: "Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3) (a) through (y) shall be presented to the jury during the trial of the alleged crime, unless the jury has been impaneled solely for resentencing, or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3) (e)(iv), (h)(i), (o), or (t). If one of these aggravating circumstances is alleged, the trial court may conduct a separate proceeding if the evidence supporting the aggravating fact is not part of the res gest[a]e of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to

Nonetheless, Macheta argues, even if the statute does not presume a court must bifurcate an aggravating factor, a court must do so where necessary to ensure the fairness of the proceeding. He contends, as he did below, that the aggravating factor instruction constituted a "comment on the evidence" because, by instructing the jury that it must decide whether "the victim of the burglary was present in the building or residence when the crime was committed," the trial court "informed the jury that a burglary had been committed and that there was a victim."[35]

A trial court's decision on whether to bifurcate an aggravating factor instruction is reviewed for abuse of discretion.[36] A court abuses its discretion if a decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'"[37]

Here, the trial court clearly instructed the jury that it was only to consider the aggravating factor if it first determined Macheta had committed the burglary. Jury instruction 19 instructed the jury to determine the aggravating factor only if they found Macheta guilty of residential burglary. And jury instruction 21 instructed the jury, "If you find the defendant not guilty of [r]esidential [b]urglary[,] do not use the

---

the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime."

[35] Appellant's Br. at 32.

[36] State v. Roswell, 165 Wn.2d 186, 198, 196 P.3d 705 (2008).

[37] State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

special verdict form."[38] Moreover, jury instruction 1 instructed the jury that the trial court would not intentionally comment on the evidence and that the jury should disregard any comment it perceived the trial court to have made. Jurors are presumed to follow the court's instructions.[39] Macheta does not establish that the trial court's decision not to bifurcate the aggravating factor instruction from the remainder of the instructions was a comment on the evidence or any abuse of discretion.

4. Prosecutorial Misconduct

Macheta challenges comments made by the prosecutor in closing argument regarding his intent in entering Schellhase's home. He argues that, by questioning whether there was any noncriminal explanation for Macheta to have entered Schellhase's home, the State shifted the burden of proof to him to disprove the charge. We conclude that no misconduct occurred.

In closing argument, the State argued:

[I]n looking at what Mr. Macheta's intent was when [he] entered into Mr. Schellhase's home, think of another plausible explanation for entering the home. You don't work your way into another person's home for an innocent purpose. Mr. Macheta didn't—[40]

Defense counsel objected, arguing the prosecutor's remarks misstated the burden of proof. The court reminded the jury that "the law is what is contained in the

---

[38] CP at 91.

[39] State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).

[40] RP (June 12, 2019) at 333.

Instructions that I have provided to you."[41]

In rebuttal, the prosecutor argued:

> In considering what his intent was, look at the circumstances surrounding the situation and his actions on that day.  Look at his statements.  Look at the jury instruction regarding intent, and think about what other plausible explanations there could be for entering the house.  There are none, other than to commit a crime.[42]

Defense counsel did not object to this statement.

To prevail on a claim of prosecutorial misconduct when, as here, a defendant has raised a timely objection, the defendant must establish the conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.[43]  To establish prejudice, the defendant must prove "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'"[44]  We review comments made by a prosecutor during closing argument in "the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[45]

It is improper for a prosecutor to argue that the burden of proof rests with the defendant.[46]  Nor may a prosecutor comment on a defendant's failure to

---

[41] Id. at 333-34.

[42] Id. at 345-46.

[43] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[44] Id. at 443 (quoting Magers, 164 Wn.2d at 191).

[45] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

[46] Thorgerson, 172 Wn.2d at 453.

present evidence because the defendant has no duty to present evidence.[47] However, a prosecutor has wide latitude to argue reasonable inferences from the evidence.[48] And "[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense."[49] "A prosecutor is entitled to point out a lack of evidentiary support for the defendant's theory of the case."[50]

Here, the purpose of the prosecutor's statement was to point out the improbability of Macheta's defense of having no intent to commit a crime when he entered Schellhase's house. The prosecutor highlighted all the evidence of Macheta's intent and argued that the evidence did not imply a plausible noncriminal explanation. The prosecutor did not suggest to the jury that Macheta had the burden to offer a reasonable explanation or disprove any element of the charged offenses. Macheta fails to establish that the comment was improper, or that it prejudiced the outcome of the trial.

5. Legal Financial Obligations

Macheta contends the judgment and sentence must specify that any funds subject to the Social Security Act's antiattachment statute, 42 U.S.C. § 407(a), may not be used to satisfy his legal financial obligations. The State acknowledges

---

[47] Id.

[48] Id.

[49] State v. Jackson, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

[50] State v. Sells, 166 Wn. App. 918, 930, 271 P.3d 952 (2012).

that Macheta receives Social Security benefits and that the judgment and sentence should be amended accordingly.

We accept the State's concession and remand to the trial court for the ministerial task of amending the judgment to reflect that legal financial obligations may not be satisfied from Macheta's Social Security benefits.  In all other respects, we affirm.

_____

WE CONCUR:

_Andrus, A.C.J._     _Mann, C.J._