941 P.2d 661 (1997)
STATE of Washington, Respondent,
v.
Harmit P. Singh RANDHAWA, Appellant.
No. 64780-1.
Supreme Court of Washington, En Banc.
August 14, 1997.
Jeffrey Thigpen, Bellingham, for appellant.
David McEachran, Whatcom County Prosecutor and Laura Hayes Deputy County Prosecutor, Bellingham, for respondent.
ALEXANDER, Justice.
Harmit Singh Randhawa appeals his conviction on a charge of vehicular homicide. His principal contentions are that (1) there was insufficient evidence to support his conviction; and (2) the trial court erred in instructing the jury that it could infer that he drove recklessly solely from evidence that he was driving in excess of the maximum lawful *662 speed at the time of the accident which caused the death of one of his passengers. Although we reject his contention that the evidence was insufficient to support his conviction, we conclude that it was error to give the challenged instruction. We, therefore, reverse Randhawa's conviction and remand for a new trial.
On December 3, 1993, Harmit Randhawa, accompanied by his brother, Bagga, and a friend, Avtar Dhadda, left Sacramento, California and began driving toward Vancouver, British Columbia. On the evening of December 4, 1993, they arrived at the United States-Canada border crossing at Blaine, Washington. Because the three men were informed by Canadian border, personnel that they would be required to pay duty on four unopened bottles of liquor, they decided not to enter Canada at that time. Instead, they drove to the home of Randhawa's cousin in Bellingham, Washington. While at this home, the three men dined and consumed some alcoholic beverages. They eventually left Bellingham at approximately 11:30 p.m. that same evening and began driving toward the border crossing at Lynden, Washington. Finding that crossing closed, they obtained directions to another border crossing at Sumas, Washington.
With Randhawa driving, the three men set out for Sumas on the East Badger Road, on which the posted speed limit is 50 m.p.h. After traveling for several miles, Randhawa approached a sweeping curve to the north leading to State Route 9. The curve is posted with a sign suggesting a speed of 25 m.p.h. Randhawa lost control of the vehicle as he was negotiating the curve. As a consequence, the car skidded across an island of gravel and grass and slammed into a power pole. Dhadda was killed in the accident. Randhawa was subsequently charged in Whatcom County Superior Court with vehicular homicide pursuant to RCW 46.61.520(1)(a) and (b).[1]
At trial, the State offered the testimony of Dr. Gary Goldfogel, the Whatcom County Medical Examiner. Goldfogel indicated that an analysis of Randhawa's blood at his laboratory showed that Randhawa's blood alcohol level was .12 percent approximately 39 minutes after the accident occurred. Randhawa objected to this testimony and to the admission of an exhibit containing the test results. He claimed that an improper foundation was laid for the admission of Goldfogel's opinion and the exhibit because Goldfogel was unable to identify the employee at the laboratory who performed the test, thus calling into question the laboratory's compliance with WAC 448-14 which governs the testing of blood. The trial court overruled his objection and admitted the test results.
Several persons who had been present at the Bellingham residence visited by Randhawa and his companions also testified. One of them, Randhawa's brother, testified that he knew Randhawa had been drinking but did not know how much. Deswinder Dhillon testified that she saw Randhawa and others drinking alcohol at the Bellingham residence but was also unable to say how much Randhawa had consumed. Hargander Dhillon testified that he saw Randhawa consume two alcoholic drinks while at the residence.
Two state troopers who arrived at the scene shortly after the accident testified. Both said that they saw Randhawa in an ambulance at the accident site and that they smelled an odor of intoxicants on his person at that time. One of the troopers testified that he could smell alcohol or intoxicants "[u]pon entering the ambulance." Verbatim Report of Proceedings (VRP) at 136. That officer also indicated that the roadway was dry at the time of the accident and no conditions existed that would have impaired a driver's visibility. Jim McClintock, a driver who had passed Randhawa from the opposite direction immediately before the accident, *663 also testified for the State. He indicated that before going by Randhawa, Randhawa veered into his [McClintock's] lane "just a little bit." VRP at 16. He said that he knew Randhawa was not "going to make the corner." VRP at 18. McClintock estimated the speed of Randhawa's vehicle at either 60 or 70 m.p.h.
Two experts testified at trial. The State presented Washington State Patrol Detective Michael Hale, who said that his analysis of skidmarks found at the scene of the crash caused him to believe that the vehicle Randhawa was driving was traveling between 50 and 70 m.p.h. at the time Randhawa first applied his brakes. Randhawa's expert witness, Kenneth Cottingham, testified that Randhawa's vehicle was traveling between 49 and 61 m.p.h. when Randhawa applied his brakes.
Randhawa testified on his own behalf. He said that he had been traveling five to ten miles per hour over the posted speed limit just prior to the time his vehicle went out of control. With regard to his alcohol consumption, he said that he had consumed only two drinks prior to the accident. He testified that he had intended to go straight on the East Badger Road and not turn to the north onto State Route 9. At the last moment, according to Randhawa, his passengers instructed him to take the corner. Randhawa said that it was at this point that he attempted to make the turn but lost control of the vehicle.
The trial court instructed the jury that it could find that Randhawa was under the influence of intoxicating liquor if either "(a) he has .10 percent or more by weight of alcohol in his blood; or (b) the intoxicating liquor lessens the driver's ability to drive a motor vehicle in any appreciable degree." Clerk's Papers (CP) at 83. It also instructed the jury that "[t]o operate a motor vehicle in a reckless manner means driving in a rash or heedless manner, indifferent to the consequences." CP at 84.
The jury found Randhawa guilty of vehicular homicide as charged. Randhawa moved, pursuant to CrR 7.4, to arrest judgment, arguing that the evidence produced at trial was insufficient to establish that he was either intoxicated or driving recklessly at the time of the accident. Randhawa's motion was denied. Following sentencing, Randhawa appealed to Division One of the Court of Appeals. That court certified his appeal to this court and we accepted direct review.

I. Challenge to the Sufficiency of the Evidence
Randhawa contends that the State failed to produce sufficient evidence that he drove recklessly or that he was intoxicated. Although he couches his assignment of error in terms that the trial court erred in instructing the jury that it could convict Randhawa of vehicular homicide[2] and in denying his motion for arrest of judgment, we view Randhawa's challenge as being to the sufficiency of the evidence to support his conviction. Indeed, he argues here, as he did at the trial court, that the State failed to produce sufficient evidence to "justify convicting the defendant of driving recklessly" and that "no rational trier of fact could conclude that the blood alcohol analysis was accurate inasmuch as the individual who conducted the test did not testify nor was he or she even identified by the State." Br. of Appellant at 39. The State responds that it presented sufficient evidence to "justify a rational trier of fact in finding, beyond a reasonable doubt, that Appellant was guilty of driving in a reckless *664 manner and while under the influence of intoxicating liquor." Br. of Resp't at 24.
The standard of review for a challenge to the sufficiency of the evidence was set out in State v. Green, 94 Wash.2d 216, 616 P.2d 628 (1980). We said there that evidence is sufficient if, after it is viewed in a light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Green, 94 Wash.2d at 221, 616 P.2d 628 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979)). Where, as here, a defendant is charged with alternative means of committing vehicular homicide, jury unanimity is not required as to which alternative the defendant is guilty of, provided the State presented sufficient evidence supporting each of the alternative means. See State v. Ortega-Martinez, 124 Wash.2d 702, 707-08, 881 P.2d 231 (1994). If there is sufficient evidence to support each alternative means submitted to the jury, the conviction will be affirmed because we infer that the jury rested its decision on a unanimous finding as to the means. State v. Whitney, 108 Wash.2d 506, 739 P.2d 1150 (1987). For reasons set forth hereinafter, we conclude that the evidence presented to the jury was sufficient to support Randhawa's conviction on both alternatives chargedoperating a motor vehicle in a reckless manner or while under the influence of intoxicating liquor.
Insofar as the allegation of driving while under the influence of alcohol is concerned, there was sufficient evidence, aside from the evidence concerning the analysis of Randhawa's blood, that Randhawa had consumed alcohol prior to the accident and that it had lessened his ability to drive a motor vehicle to an appreciable degree. In that regard, two Washington State troopers said that they smelled an odor of intoxicants on Randhawa, one indicating that he noticed it immediately upon entering the ambulance in which Randhawa was being treated. Several other witnesses, including Randhawa himself, testified that Randhawa had been drinking prior to the accident.
As far as the alcohol's effect on Randhawa's driving, the State presented testimony of an eyewitness and an expert witness which supported a conclusion that Randhawa had been speeding and that he veered out of his own lane of travel just before the accident occurred. In addition, Randhawa admitted that he was speeding and his expert gave testimony which could have supported the jury's finding that he was driving over the speed limit. Added to this was the evidence that Randhawa failed to negotiate a sweeping curve, despite the fact that the roadway on which he was driving was dry and there were no atmospheric conditions that would have impaired his ability to see the curve or the sign suggesting a reduced speed in the curve. When viewed in a light most favorable to the State, this evidence is sufficient to support a finding by the jury that Randhawa had consumed intoxicating liquor and that the alcohol had lessened, to an appreciable degree, his ability to drive his automobile. This evidence was also sufficient to convince the jury beyond a reasonable doubt that Randhawa was driving his vehicle in a reckless manner, i.e., a "rash or heedless manner, indifferent to the consequences." CP at 84.

II. Permissive Inference Instruction
The central issue in this appeal is whether the trial court erred in instructing the jury that it could infer, solely from evidence that Randhawa was driving above the posted speed limit, that he was driving recklessly. The instruction to which Randhawa assigns error reads as follows:
A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.
This inference is not binding upon you, and it is for you to determine what weight, if any, such inference is to be given.
Instruction 8, CP at 85.
Randhawa suggests that this instruction is a permissive inference instruction that is constitutionally deficient. He asserts, therefore, that the trial court erred in giving the instruction to the jury and that reversal of his conviction is required.
*665 Permissive inference instructions are unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." County Court of Ulster County v. Allen, 442 U.S. 140, 166 n. 28, 99 S.Ct. 2213, 2229 n. 28, 60 L.Ed.2d 777 (1979) (quoting Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969)). If the effect of the permissive inference instruction is to relieve the State of its burden to prove each and every element of the crime beyond a reasonable doubt, however, the instruction violates the Due Process Clause. Ulster County, 442 U.S. at 156, 99 S.Ct. at 2224.
The State responds that it was not error for the trial court to give the challenged instruction. In support of its argument, the State relies on our decisions in State v. Hanna, 123 Wash.2d 704, 871 P.2d 135, cert. denied, 513 U.S. 919, 115 S.Ct. 299, 130 L.Ed.2d 212 (1994), and State v. Kenyon, 123 Wash.2d 720, 871 P.2d 144 (1994), two cases in which we approved instructions identical to the instruction challenged here.
In Hanna, the defendant was charged with vehicular homicide and vehicular assault. The evidence at trial showed that the defendant's vehicle crossed a grass median and collided with an oncoming vehicle, causing the death of the other driver and serious injury to that driver's passenger. The State also presented testimony of four eyewitnesses who confirmed that the defendant had been "racing" with another car and had reached speeds of 80 to 100 m.p.h. in his car prior to the accident. An expert witness opined that the defendant's car was traveling at 103 m.p.h. at the time of the collision. Hanna, 123 Wash.2d at 707, 871 P.2d 135. A jury found the defendant guilty of the charges.
In reviewing the jury instruction challenged in Hanna, we applied the test from Ulster County, stating that when an inference is only part of the State's proof supporting an element of the crime, "due process requires the presumed fact to flow `more likely than not' from proof of the basic fact." Hanna, 123 Wash.2d at 710, 871 P.2d 135 (citing Ulster County, 442 U.S. at 165, 167, 99 S.Ct. at 2228-29, 2229-30). We indicated, further, that the determination of whether a permissive inference instruction meets that standard must be done on a "case-by-case basis in light of the particular evidence presented to the jury in each case." Hanna, 123 Wash.2d at 712, 871 P.2d 135 (citing Ulster, 442 U.S. at 162-63, 165, 99 S.Ct. at 2227-28, 2228-29 and Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir.1992), cert. denied, 506 U.S. 1052, 113 S.Ct. 975, 122 L.Ed.2d 130 (1993)). In affirming Hanna's conviction, we concluded that the trial court did not err in giving the instruction, noting that "the presumed fact of reckless driving more likely than not flows from the proved fact of Hanna's excessive speed." Hanna, 123 Wash.2d at 713, 871 P.2d 135.[3]
In Kenyan, the evidence at trial showed that the defendant's vehicle had spun out of control and collided with an oncoming minivan. Because the defendant's passenger was killed and the occupants of the minivan were seriously injured, he was charged with vehicular homicide and vehicular assault. Various eyewitnesses estimated Kenyon's speed prior to the accident, one testifying at trial that Kenyon had been traveling as much as twice the speed limit just prior to the collision. The State's expert witness confirmed that account. Kenyan, 123 Wash.2d at 722, 871 P.2d 144.
In affirming the defendant's conviction for vehicular homicide and vehicular assault, we affirmed our holding in Hanna to the effect that the constitutionality of an inference must be assessed in light of the particular facts of the case. Kenyon, 123 Wash.2d at 721-22, 871 P.2d 144 (citing Hanna, 123 Wash.2d 704, 871 P.2d 135). Viewing the evidence there, we concluded that the "elemental fact of reckless driving more likely *666 than not flowed from the proved fact of Kenyon's excessive speed." Kenyon, 123 Wash.2d at 724, 871 P.2d 144.
Viewing the facts here in light of the test we pronounced in Hanna and affirmed in Kenyon, we cannot say with substantial assurance that the inferred fact, Randhawa's reckless driving, more likely than not flowed from the proved factRandhawa's speed. That is so because the facts relating to Randhawa's speed were not nearly as egregious as those in Hanna and Kenyon. The most that can be said is that Randhawa was traveling between 10 to 20 m.p.h. over the posted speed limit of 50 m.p.h. just before the accident. That speed is not so excessive that one can infer solely from that fact that the driver was driving in a rash or heedless manner, indifferent to the consequences. In short, although it was essentially undisputed that Randhawa was speeding, we cannot say with substantial assurance that the inferred fact of reckless driving flowed from the evidence of speed alone.
We do not, however, retreat from the view we expressed in Hanna and Kenyon that there are instances when the fact of speed alone may permit a jury to infer that a driver was recklessly driving. It will, however, be the rare case where speed alone will justify the giving of the permissive inference instruction such as that under review here. Although the State points to evidence other than speed in arguing that the jury instruction was proper, the flaw in that argument is that the challenged instruction invited the jury to draw an inference of reckless driving based solely on speed. Under these facts, the trial court erred in giving the instruction here.

III. "To Convict" Instruction
Randhawa also contends that the trial court's "to convict" instruction, which we have set out above, was incomplete in that it did not require the jury to find that Randhawa's intoxication was the proximate cause of Dhadda's death. We recently addressed this precise issue and determined that the State is not required to prove a causal connection between the driver's intoxication and the ensuing fatality. See State v. Salas, 127 Wash.2d 173, 897 P.2d 1246 (1995); State v. Rivas, 126 Wash.2d 443, 896 P.2d 57 (1995). We decline Randhawa's invitation to overrule those decisions.

IV. Medical Evidence of Randhawa's Intoxication
Finally, Randhawa asserts that a proper foundation was not laid for the admission of Dr. Goldfogel's testimony or the exhibit containing the results of Randhawa's blood test. He asserts there was no showing that the test was conducted in accordance with the Washington Administrative Code provisions governing such testing. The State responds that the exhibit showing Randhawa's blood alcohol level and Dr. Goldfogel's testimony were both admissible pursuant to the Uniform Business as Records Act as an exception to the general rule of hearsay.
Because we are remanding for a new trial, we need not determine the admissibility of Dr. Goldfogel's testimony or the exhibit containing the results of the analysis of Randhawa's blood. On retrial, the State may choose to present the testimony of the individual in the medical examiner's office who conducted the analysis of Randhawa's blood and prepared the report for the medical examiner's office. That would certainly be the better practice and would obviate the objection that Randhawa has registered to Goldfogel's testimony.

V. Conclusion
We conclude that the State produced sufficient evidence to sustain the jury's verdict. The trial court did, however, err in instructing the jury that it could infer Randhawa was driving recklessly based on the evidence of his excessive speed. We, therefore, reverse and remand.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] RCW 46.61.520 provides, in pertinent part:

"(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
"(a) While under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502; or
"(b) In a reckless manner[.]"
[2] The instruction to which Randhawa assigns error is instruction 4, the "to convict" instruction. The instruction reads, in pertinent part, as follows:

"To convict the defendant, HARMIT P. SINGH RANDHAWA, of the crime of VEHICULAR HOMICIDE, each of the following elements of the crime must be proved beyond a reasonable doubt:
"(1) That on or about the 5th day of December, 1993, the defendant operated a motor vehicle;
"(2) That the Defendant's driving proximately caused injury to another person;
"(3) That at the time of causing the injury, the defendant was operating the motor vehicle
"(a) while under the influence of intoxicating liquor or
"(b) in a reckless manner;
"(4) That the injured person died as a proximate result of the injuries; and
"(5) That the acts occurred in Whatcom County, Washington." CP at 81.
[3] We are not unmindful that after we affirmed Hanna's conviction, the Ninth Circuit Court of Appeals granted Hanna's petition for a writ of habeus corpus. Hanna v. Riveland, 87 F.3d 1034 (9th Cir.1996). Despite doing so, that court did not conclude that the giving of such an instruction would always be error, noting that recklessness would, at some point, more than likely flow from proof of excessive speed. Hanna, 87 F.3d at 1037.