**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82112-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| NATHAN LEONARD YAFFEE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Nathan Yaffee appeals the trial court's judgment and sentence finding him guilty of attempted second degree arson and attempting to elude a pursuing police vehicle. Yaffee argues: (1) that there was insufficient evidence to convict him of second degree arson, (2) that the instruction allowing jurors to permissively infer malice relieved the State of its burden of proof and was a judicial comment on the evidence, (3) that prosecutorial misconduct denied him a fair trial, and (4) that the information was inadequate to advise him of the charges that he was facing. We disagree and affirm.

Yaffee also raises issues related to his sentencing. We agree with several of his arguments and remand to the trial court to correct the sentence consistent with this opinion.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On April 19, 2020, around 10:00 p.m., Patrick Gunn was driving past the Lynwood Police Department parking lot on his way to purchase groceries. Gunn observed a man shoving a large piece of paper or cardboard with waist-high flames underneath a police vehicle. Gunn searched for his cell phone, but he had left it at home.

After about 10 minutes of shopping, Gunn drove back home past the police station where he observed the same individual starting to go towards his car. Gunn went home and called the police to tell them that someone in the police parking lot was trying to set one of their vehicles on fire.

Sergeant Joshua Kelsey was the patrol sergeant when the call came in. Kelsey drove through the department parking lot and observed a vehicle parked at an angle in the opposite lane near the lot's exit. The vehicle was parked next to a fully marked transit Ford police pickup truck. Meanwhile, Officer Kris Munoz approached the parked vehicle in the opposite direction. As Kelsey tried to initiate a stop, the vehicle left, drove around Munoz, and then accelerated rapidly.

Kelsey activated his emergency lights and siren and pursued the vehicle. The vehicle exceeded speed limits, ran stop lights, swerved through traffic, and entered oncoming lanes. Several other police units joined in the pursuit. Kelsey ultimately disabled the vehicle using a Pursuit Intervention Technique (PIT) maneuver. Officer Arthur Burke approached Yaffee, removed him from the vehicle, and handcuffed him. After reading Yaffee his Miranda[1] rights, Burke asked Yaffee about the fire at the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Lynwood Police Department parking lot. Burke testified that Yaffee replied, "I did something stupid . . . my life [is] . . . my life [is] pretty bad and, you know, I just did something stupid."

Police searched Yaffee's car and found lighter fluid, zip ties, newspapers, paper towels, matches, lighters, and foil. Police brought Gunn to the scene of the arrest and later to the police station to identify the vehicle as the one Gunn saw beside the man shoving flaming materials under the police pickup. Gunn identified the vehicle in both instances.

Police discovered a smoldering debris pile underneath the police pickup's gas tank with aluminum foil and what they believed was a fuse. Police called in the bomb squad to investigate, which deployed a bomb robot. The robot manipulated the aluminum object to reveal that it was a partially eaten Chipotle burrito.

The State charged Yaffee with attempted second degree arson and attempting to elude a pursuing police vehicle, both felonies. A jury convicted Yaffee as charged.

Yaffee appeals.

## ANALYSIS

### A. Sufficiency of the Evidence

Yaffee argues that there was insufficient evidence to convict him of attempted second degree arson. We disagree.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the

-3-

State and interpret them most strongly against the defendant.  State v. Partin, 88 Wn.2d 899, 907-07, 567 P.2d 1136 (1977).  "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."  Salinas, 119 Wn.2d at 201.

A person is guilty of second degree arson if "he or she knowingly[2] and maliciously[3] causes a fire or explosion which damages [an] . . . automobile."  RCW 9A.48.030(1).  "A person is guilty of an attempt to commit a crime if, with intent[4] to commit a specific crime, he or she does any act which is a substantial step[5] toward the commission of that crime.  RCW 9A.28.020(1).

Sufficient evidence supports Yaffee's conviction for attempted second degree arson.  Yaffee parked in the westbound lane adjacent the police pickup.  He then spent 10 to 15 minutes—enough time for Gunn to complete a quick grocery trip—attempting to light a fire beneath the gas tank of a police pickup.  When police arrived, Yaffee left the scene and tried to evade pursuing police.  After being detained and read his Miranda rights, Yaffee told the police that he "did something stupid."  Accelerants,

---

[2] A person knows or acts knowingly or with knowledge when:
    (i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
    (ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.
RCW 9A.08.010.

[3] "Malice" and "maliciously" shall import an evil intent, wish, or design to vex, annoy, or injure another person.  Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty.
RCW 9A.04.110(12).

[4] "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime."  RCW 9A.08.010(1)(a).

[5] A substantial step is conduct that strongly indicates a criminal purpose; it is more than mere preparation.  State v. Oakley, 158 Wn. App. 544, 550, 242 P.3d 886 (2010).

flammable materials, and the shopping bag associated with the burrito found in the smolder were in Yaffee's vehicle. When viewing this evidence in the light most favorable to the State, any rational trier of fact could have found that Yaffee took a substantial step toward knowingly and maliciously causing a fire or explosion which would have damaged the police pickup. RCW 9A.28.020(1); 9A.48.030(1).

B. Jury Instruction

Yaffee argues that the instruction allowing jurors to permissively infer malice relieved the State of its burden of proof and was a judicial comment on the evidence. We disagree.

Jury instruction 14 stated:

> Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person.

> Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another.

1. Burden of Proof

Yaffee first asserts that the permissive inference instruction relieved the State of its burden of proof and thereby violated his due process rights. We review due process challenges to jury instructions de novo. State v. DeRyke, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003). A permissive inference cannot relieve the State of its burden to prove each element of a crime without violating due process. State v. Randhawa, 133 Wn.2d 67, 76, 941 P.2d 661 (1997). We evaluate the constitutional propriety of these instructions based on the particular facts of each case and specifically the State's evidence supporting the inference. Randhawa, 133 Wn.2d at 76.

"A permissive interference is valid when there is a 'rational connection' between the proven fact and the inferred fact, and the inferred fact flows 'more likely than not' from the proven fact." State v. Ratliff, 46 Wn. App. 325, 330-31, 730 P.2d 716 (1986) (citing County Court of Ulster County v. Allen, 442 U.S. 140, 167, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)). Here, there was a rational connection between the proven fact and the inference of malice. Yaffee arrived at the Lynwood Police Department with combustible materials and accelerants. For at least the duration of Gunn's shopping trip, Yaffee placed burning materials underneath the police pickup. Yaffee placed these materials beneath the gas tank of the pickup, leading to the possibility that the fire could scorch or even blow up the vehicle. Given these facts, the inference of malice flows more likely than not from Yaffee's conduct.

2. Judicial Comment on the Evidence

Yaffee next contends that this instruction was a judicial comment on the evidence. We review jury instructions de novo to determine whether the trial court improperly commented on the evidence. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. "A jury instruction that does no more than accurately state the law pertaining to an issue . . . does not constitute an impermissible comment on the evidence." State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

Here, the instruction is not a judicial comment on the evidence because it did no more than accurately state the law pertaining to the issue of malice. RCW 9A.04.110(12). The instruction did not, as Yaffee asserts, convey the court's opinion

that malice may be inferred from an act done in willful disregard to the rights of another. This is not the court's opinion; this is the law as provided by statute.

C. Prosecutorial Misconduct

Yaffee argues that prosecutorial misconduct warrants a new trial. We disagree.

To prevail on a claim of prosecutorial misconduct, Yaffee must establish "that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial." State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). The burden to establish prejudice requires Yaffee to prove that "there is substantial likelihood [that] the instances of misconduct affect the jury's verdict." Magers, 164 Wn.2d at 191 (alteration in original). Failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that no instruction could cure the resulting prejudice. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). "A conviction must be reversed only if there is a substantial likelihood that the alleged prosecutorial misconduct affected the verdict." Russell, 125 Wn.2d at 86.

Yaffee raises two instances of alleged prosecutorial misconduct on appeal. Yaffee's counsel did not object to these instances at trial. Thus, we review each to determine whether the remarks were so flagrant and ill intentioned that no instruction could have cured them. Russell, 125 Wn.2d at 86.

First, Yaffee asserts that the prosecutor's statements involving the political climate were outside the record and overly inflammatory. During defense counsel's opening statement he said, "a bag, a burrito, and a bomb squad. This case is about perceptions and about prudent reactions, versus overreactions." During voir dire, he

asked jurors about excessive spending by law enforcement, whether it was reasonable to call the fire department when the fire was extinguished, and whether at times an officer overreacts.

During closing arguments, the prosecutor stated:

Now, counsel when he opened his case, what did he say? 'A bag, a burrito, and the bomb squad. The difference between prudence and overreaction.'

In this political climate, given the fact that no officers could remember a single incident like this, given where we are today, we talked about it in voir dire, the bag that's unattended at the airport. This was not an overreaction. We've never seen this before.

Yaffee fails to establish prejudice. While we acknowledge that the prosecutor's statement was outside the record and risked appealing to the passions of the jury, viewed in context the statement responded to defense counsel's questioning of the use of resources to investigate the smolder, and not Yaffee's guilt. Any deficiency could have been addressed by a curative jury instruction.

Second, Yaffee contends that the prosecutor misstated the law when he argued:

Reckless burning is starting a fire and then something goes awry. Reckless burning is putting one too many pallets on top of your campfire and then the paint on your next-door neighbor's house starts to get hot and melts. Reckless burning is disregarding the fact that there's a risk.

The prosecutor then gave additional examples of reckless burning.

Here, Yaffee fails to demonstrate that the remarks were flagrant or ill intentioned. Moreover, any misstatement of the law could have been cured with a curative instruction.

D. Adequacy of the Information

Yaffee argues for the first time on appeal that the information was inadequate to inform him of the charges of attempted second degree arson and attempting to elude a pursuing police vehicle. We disagree.

The Constitution of the State of Washington requires that "all essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). "It is sufficient to charge in the language of the statute if the statute defines the offense with certainty." Kjorsvik, 117 Wn.2d at 99; Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."). When a charging document is first challenged on appeal, "it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment." Hagner v. United States, 285 U.S. 427, 433, 52 S. Ct. 417, 420, 76 L.Ed. 861 (1932).

Yaffee asserts that the information was constitutionally deficient because it failed to allege specific facts. The information stated:

> Count I: SECOND DEGREE ARSON ATTEMPTED, committed as follows: That the defendant, on or about the 19th day of April, 2020, with intent to commit second degree arson, to-wit: did knowingly and maliciously cause a fire or explosion that damages any motor vehicle, did do an act which was a substantial step towards the commission of that crime; proscribed by RCW 9A.28.020 and RCW 9A.48.030, a felony.

Count II: ATTEMPTING TO ELUDE A PURSUING POLICE VEHICLE, committed as follows: That the defendant, on or about the 19th day of April, 2020, as a driver of a motor vehicle, did willfully fail or refuse to immediately bring his or her vehicle to a stop and did drive his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after having been given a visual or audible signal to bring the vehicle to a stop, said signal having been given by hand, voice, emergency light, or siren by a uniformed police officer whose vehicle was equipped with lights and siren; proscribed by RCW 46.61.024(1), a felony.

The information in Yaffee's charging document is not constitutionally inadequate. The information contained more than the elements of both attempted second degree arson and attempting to elude a pursuing police vehicle.[6] The information also contains the dates in which the alleged crimes occurred, and that the attempted arson involved a motor vehicle. Combined, the information afforded notice to Yaffee of the nature and cause of the accusation against him.

E. Sentencing

Yaffee raises four issues related to his sentencing. We address each in turn.

1. Supervision Fees

Yaffee argued that the trial court erred by imposing supervision fees. We agree. Discretionary legal financial obligations, may not be imposed on a person who is indigent at the time of sentencing RCW 10.01.160(3). Supervision fees are discretionary legal financial obligations. State v. Dillon, 12 Wn. App. 2d. 133, 152, 456 P.3d 1199 (2020); State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021). Yaffee was found to be indigent, and the trial court declined to impose otherwise mandatory

---

[6] Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens. RCW 46.61.024(1).

fees due to his indigency. Because of Yaffee's indigency, we remand to the trial court to strike the supervision fees from the sentence and judgment.

2. Social Security Benefits

Yaffee argues that this court should remand to amend the judgment and sentence to state that legal financial obligations may not be satisfied out of Yaffee's Supplemental Security Income (SSI). We agree.

In State v. Catling, 193 Wn.2d 252, 438 P.3d 1174 (2019), the court held that Social Security benefits could not be used for debt retirement. Although Yaffee was not a recipient of SSI at the time of sentencing because he was incarcerated, he previously received SSI benefits. On remand, the trial court should amend the judgment and sentence to indicate that the imposed fees may not be satisfied out of any funds subject to 42 U.S.C. § 407(a).

3. Prohibition of Contact with the Lynwood Police Department

Yaffee argues that this court should remand to modify his community custody condition over contact with the Lynwood Police Department. We agree.

Yaffee asserts that the community custody condition stating that he "have no contact with the Lynwood Police Department" should be modified to state that he may contact the police department in its official capacity. The State counters that Yaffee may use other police resources, such as the Sheriff's Office or State Patrol, should he need assistance. The State's argument is unconvincing. If Yaffee needs to contact the Lynwood Police Department or be contacted by them in an official capacity he should be able to do so without violating his community custody. We remand to the trial court

-11-

to modify the community custody condition to state that "the defendant shall have no contact with Lynwood Police Department except in its official capacity."

    4. DNA Fee

    Yaffee argues that the trial court erred by imposing a $100 DNA fee. We agree.

    A DNA fee may not be imposed on a person who suffers from a mental health condition and lacks the ability to pay. RCW 9.94A.777.[7] The trial court stated at sentencing that "it seemed pretty clear . . . that [Yaffee] had some mental health issues." The record demonstrates that Yaffee was on public assistance through SSI, but the basis for SSI was not stated. Because of Yaffee's perceived mental health issues, we remand to the trial court to determine whether Yaffee has a mental health issue under RCW 9.94A.777(2) and, if so, whether he has the means to pay the $100 DNA fee.

    Affirmed and remanded for proceedings consistent with this opinion.

_____
Mann, C.J.

WE CONCUR:

_____          _____
Bowman, J.                       Coburn, J.

_____

    [7] (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under terms of this section, has the means to pay such additional sums.
    (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.