IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33227-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VINCENT L. FOWLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Vincent Fowler appeals his conviction for two counts of first degree child molestation and one count of first degree rape of a child. He contends the trial court erred by (1) commenting on the evidence when it gave missing witness and non-corroboration jury instructions, (2) improperly giving an unconstitutional missing witness instruction, and (3) imposing $1,135 in legal financial obligations (LFOs) for court-appointed counsel without making the requisite findings on his ability to pay. We disagree with Mr. Fowler's contentions and affirm his conviction.

## FACTS

Mr. Fowler met A.G. and A.C.G.'s homeless mother through a friend. A.G. was either nine or ten when she met Mr. Fowler, and A.C.G. was eight or nine. Mr. Fowler occasionally watched over the girls and gave them food, rides, and a place to stay.

One night, A.G. stayed at Mr. Fowler's apartment. According to A.G., Mr. Fowler's roommate, Monica Boyle,[1] was not present the entire night. A.G. said she played with the dog before falling asleep on the couch in the living room. Mr. Fowler slept on the floor. She woke up when she felt something unzip her pants; she was wearing a shirt and jeans and had shorts and underwear underneath her jeans. Over her clothes, A.G. felt Mr. Fowler touch her vagina. A.G. turned over, got up, and went to the bathroom. She noticed her zipper was undone. When she returned, Mr. Fowler was pretending to sleep on the floor. A.G. sat awake for the rest of the night. A.G. told her friend the next day. She told her brother, her sister, and her mom; her mom did not believe her. A.G. said Mr. Fowler apologized to her, said he was drunk, and he told her if he had done it, he would not do it again. A.G. continued to spend time with Mr. Fowler after this incident, but she felt safe because they were not alone.

A.C.G. experienced two similar incidents with Mr. Fowler. The first occurred while A.C.G. and her family were at a friend's house. A.C.G. fell asleep on one couch in the living room while Mr. Fowler fell asleep on the other couch. She woke up when he touched her. Mr. Fowler had pulled her pants and underwear down to her knees and was touching the inside of her vagina with his hands. He stopped touching her when her mom, who was sleeping in the bedroom, got up to use the bathroom. When her mom came out of the bathroom, A.C.G. told her mom she wanted to sleep with her.

---

[1] While Mr. Fowler testified his roommate's name was Monica Boyd, all references to her after his testimony are to Monica Boyle.

The second incident occurred in the same house, two days after the couch incident. A.C.G. was asleep on the bed in the bedroom; A.G. and their older brother were also sleeping on the bed. A.C.G. wore a skirt and underwear. Mr. Fowler came into the bedroom and touched A.C.G.'s vagina under her skirt but on top of her underwear. He stopped touching her when her brother moved.

Both A.G. and A.C.G. talked with a child interviewer at the prosecutor's office. Detective Kenny Davis reviewed the girls' statements and spoke with Natalie McMahon, the apartment manager, and the girls' mom. He interviewed Mr. Fowler, who denied the allegations but admitted he knew the girls, had spent time with them, and was around them during the relevant time frame.

At trial, Mr. Fowler again denied the allegations. Regarding the incident with A.G., Mr. Fowler testified Ms. Boyle and her dog were at the apartment. He fell asleep on the floor while Ms. Boyle and A.G. sat on the couch watching a movie. In the middle of the night, the dog woke him up by licking his face. He pushed the dog off him, but the dog jumped onto A.G. and licked her, which caused her to awaken. He took the dog off A.G. and called to Ms. Boyle, who came out of the kitchen to get the dog. He talked with Ms. Boyle for five minutes before going back to sleep on the floor. A.G. was already asleep on the couch and was still asleep when he left the next morning. While Mr. Fowler mentioned he lived with Ms. Boyle during his interview with Detective Davis, he never mentioned a dog or that she was present that night.

Because of Mr. Fowler's testimony, the State requested a missing witness jury instruction. The court gave the instruction over Mr. Fowler's objection. Mr. Fowler was convicted of two counts of first degree child molestation and one count of rape of a child in the first degree. Without objection, the court imposed $1,135 in LFOs for court-appointed attorney fees. Mr. Fowler appealed.

ANALYSIS

A.  Judicial Comment Claims

The issue is whether the non-corroboration instruction (No. 8) and the missing witness instruction (No. 9) constituted judicial comments on the evidence.

Preliminarily, Mr. Fowler objected to the missing witness instruction at trial, but he did not object to the non-corroboration instruction. Because the claimed errors allege constitutional errors, we consider the issue. *See State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). We review constitutional challenges to jury instructions de novo, looking at them within the context of the instructions as a whole. *Id.* at 721.

"Article IV, section 16 of the Washington Constitution prohibits a judge from conveying his or her personal perception of the merits of the case or giving an instruction that implies matters of fact have been established as a matter of law." *State v. Steen*, 155 Wn. App. 243, 247, 228 P.3d 1285 (2010). The purpose behind this provision is to prevent the jury from being influenced by the court's opinion. *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999). Because the jury is the sole judge of the weight of testimony, "[t]he touchstone of error in a trial court's comment on the

4

evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995); *see also In re Detention of R.W.*, 98 Wn. App. 140, 144, 988 P.2d 1034 (1999) (a court makes an impermissible comment on the evidence when it instructs the jury as to the weight it should give certain evidence). A court's comment on the evidence is presumed prejudicial, and the State must show no resulting prejudice. *Lane*, 125 Wn.2d at 838-39.

First, Mr. Fowler contends jury instruction 8 contained a judicial comment on the evidence. Instruction 8 states: "In order to convict a person of Child Molestation in the First Degree and/or Rape of a Child in the First Degree it is not necessary that the testimony of the alleged victim be corroborated." Clerk's Papers (CP) at 45. Instructions accurately stating the applicable law are not comments on the evidence. *State v. Zimmerman*, 130 Wn. App. 170, 180-81, 121 P.3d 1216 (2005). RCW 9A.44.020(1) provides "[i]n order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated." *See also* RCW 9A.44.073 (defining rape of a child in the first degree); RCW 9A.44.083 (defining child molestation in the first degree).

Similar non-corroboration instructions have been upheld. In *State v. Malone*, 20 Wn. App. 712, 714-15, 582 P.2d 883 (1978), the court found a substantially similar instruction was not a comment on the evidence nor was it erroneously given because it was a correct statement of Washington law, was pertinent to the issues presented, its

5

phrasing did not convey the court's opinion on the alleged victim's credibility, and the court had a duty to instruct the jury on pertinent legal issues. *See also Zimmerman*, 130 Wn. App. at 181-83 (noting even though the Washington Supreme Court Committee on Jury Instructions recommends against such an instruction, the court was bound to hold giving such an instruction was proper based on *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949)). Here, the trial court's instruction was based on RCW 9A.44.020(1). The instruction was a neutral and accurate statement of the law; it did not contain facts nor did it convey the court's belief in any testimony.

Mr. Fowler incorrectly argues additional *Clayton* language is needed in instruction 8 telling the jury they decide credibility and including the standard of proof. *See Clayton*, 32 Wn.2d at 572, 577.[2] This issue was addressed in *State v. Johnson*, 152 Wn. App. 924, 219 P.3d 958 (2009). The *Johnson* court, seeing "no clear pronouncement from [the Washington] Supreme Court on whether the additional language is necessary to prevent an impermissible comment on the evidence under article [IV], section 16," held the one-sentence instruction was "not an erroneous

---

[2] *Clayton* instructed:

> You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

*Clayton*, 32 Wn.2d at 572.

6

statement of the law." *Id.* at 936. However, the court cautioned trial courts should consider giving the additional language and omission of that language may be an impermissible comment on the alleged victim's credibility. *Id.* at 936-37. Here, the trial court did separately instruct them on credibility and the standard of proof. Looking at the instructions as a whole, we conclude giving the non-corroboration instruction was not error.

Second, Mr. Fowler next contends jury instruction 9 contained a judicial comment on the evidence. Instruction 9 states:

> If a person who could have been a witness at the trial is not called to testify, you may be able to infer that the person's testimony would have been unfavorable to a party in the case. You may draw this inference only if you find that:
>
> (1) The witness is within the control of, or peculiarly available to, that party;
> (2) The issue on which the person could have testified is an issue of fundamental importance, rather than one that is trivial or insignificant;
> (3) As a matter of reasonable probability, it appears naturally in the interest of that party to call the person as a witness;
> (4) There is no satisfactory explanation of why the party did not call the person as a witness; and
> (5) The inference is reasonable in light of all the circumstances.
> The parties in this case are the State of Washington and Vincent L. Fowler.

CP at 46. Again, an instruction stating the applicable law pertaining to an issue in the case is not a comment on the evidence. *R.W.*, 98 Wn. App. at 145. This instruction is an accurate statement of the law. The instruction did not instruct the jury on the weight to give certain evidence but does allow the jury to draw inferences; it does not convey the court's feelings on the evidence. Instruction 9 does not comment on the evidence.

7

### B. Missing Witness Instruction

Mr. Fowler first contends the missing witness instruction generally violates due process by shifting the burden of proof onto him and encouraging the jury to make an unreliable, irrational inference of his guilt. Second, Mr. Fowler contends instructing the jury on the missing witness doctrine was improper under these facts.

The missing witness doctrine permits the State to "point out the absence of a 'natural witness' when it appears reasonable that the witness is under the defendant's control or peculiarly available to the defendant and the defendant would not have failed to produce the witness unless the testimony were unfavorable." *State v. Montgomery*, 163 Wn.2d 577, 598, 183 P.3d 267 (2008). Because the doctrine subjects the defendant's theory of the case to the same scrutiny as the State's theory, the State is allowed to argue and the jury can infer the missing witness' testimony would have been unfavorable to the defendant. *Id.* Over Mr. Fowler's objection, the trial court allowed the State to argue to the jury that Ms. Boyle's testimony would have been unfavorable to Mr. Fowler; the court also gave a jury instruction to that effect.

Initially, we address Mr. Fowler's due process arguments. Constitutional challenges may be raised for the first time on appeal. RAP 2.5(a). "Due process requires the State bear the 'burden of persuasion beyond a reasonable doubt of every essential element of a crime.'" *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994) (quoting *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct., 1965, 85 L. Ed. 2d

344 (1985)). In meeting its burden of proof, the State may use evidentiary devices including inferences and presumptions. *Id.*

In order to determine whether an inference instruction, such as the missing witness instruction, violates a defendant's right to due process, appellate courts "must determine whether the instruction was only part of the State's proof supporting an element of the crime or whether the State relied solely on the inference." *State v. Reid,* 74 Wn. App. 281, 285, 872 P.2d 1135 (1994). If the inference was the sole basis for finding guilt, the inference must satisfy the reasonable doubt standard. *Id.* at 285-86; *see also Hanna,* 123 Wn.2d at 710-11 (discussing such an inference as a mandatory presumption). However, "[i]f the inference was only part of the proof, due process requires the presumed fact to flow more likely than not from proof of the basic fact." *Reid,* 74 Wn. App. at 285 (quoting *Hanna,* 123 Wn.2d at 710) (internal quotation marks omitted); *see also Hanna,* 123 Wn.2d at 710 (discussing such an inference as a permissive inference or presumption).

Both parties agree the missing witness instruction is a permissive inference. A permissive inference "do[es] not relieve the State of its burden of persuasion because the State must still convince the jury the suggested conclusion should be inferred from the basic facts proved." *Hanna,* 123 Wn.2d at 710. As such, permissive inferences are allowed "when there is a rational connection between the proven fact and the inferred fact, and the inferred fact flows more likely than not from the proven fact." *State v. Ratliff,* 46 Wn. App. 325, 331, 730 P.2d 716 (1986) (internal quotation marks omitted).

9

Whether an inference is allowed is determined on a case-by-case basis. *Hanna*, 123 Wn.2d at 712 (stating the State is entitled to an inference if it introduces facts supporting the inference to the degree required by due process and the jury is free to reject the inference if it gives more weight to the defendant's version of facts).

The missing witness instruction given in Mr. Fowler's case satisfies due process. A rational connection exists between the inferred fact (Ms. Boyle's testimony would have been unfavorable) and the proven fact (Mr. Fowler's testimony that Ms. Boyle was present and could have corroborated his story about the dog). The inferred fact flows more likely than not from the proven fact: if Mr. Fowler's version of events was true and the case was essentially a credibility contest, he would have called someone, such as Ms. Boyle, to corroborate his testimony. We are satisfied such an instruction does not impermissibly shift the burden of proof. *Montgomery*, 163 Wn.2d at 599.

Mr. Fowler cites to numerous out-of-state cases to support his contention the instruction is unconstitutional. But we need not resort to persuasive authorities when our precedent sufficiently guides us. Moreover, the majority of these cases have not found the instruction violates due process. *See, e.g.*, *State v. Tahair*, 172 Vt. 101, 109, 111 n.3, 772 A.2d 1079 (2001); *State v. Malave*, 250 Conn. 722, 737-38, 737 A.2d 442 (1999); *Russell v. Com.*, 216 Va. 833, 835-36, 223 S.E.2d 877 (1976). Mr. Fowler argues the historical reasons for the missing witness doctrine are no longer relevant; while this limits the prevalence of the doctrine in modern times, it does not mean the doctrine is unconstitutional. As for Mr. Fowler's concerns about strategic reasons not to

10

call witnesses, the instruction itself states there must be no satisfactory explanation for the witness' absence. The court ruled on this outside the presence of the jury, and Mr. Fowler was able to raise his arguments, including strategic arguments.

Next, we address whether the trial court properly gave the instruction. Mr. Fowler argues the instruction was improper because (1) Ms. Boyle's testimony was not material, (2) Ms. Boyle was not particularly available to Mr. Fowler, and (3) the instruction shifted the burden of proof. We do not disturb a trial court's decision about whether to give a missing witness instruction absent a clear showing of an abuse of discretion. *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336 (1998). We review de novo whether legal error in jury instructions could have misled the jury. *Montgomery*, 163 Wn.2d at 597.

The missing witness doctrine applies equally to the State and the defense. *State v. Blair*, 117 Wn.2d 479, 488, 816 P.2d 718 (1991). Because a criminal defendant does not have to present evidence, the State cannot suggest a defendant has this burden. *Montgomery*, 163 Wn.2d at 597. However, the missing witness doctrine allows the State to argue a missing witness' testimony would have been unfavorable to the defendant. *Id.* at 598. In light of these two competing considerations, the limitations on the application of the missing witness doctrine "are particularly important when, as here, the doctrine is applied against a criminal defendant." *Id.* The missing witness doctrine applies only if four elements are met: (1) the missing witness' testimony must be material and not cumulative; (2) the missing witness must be "particularly under the

11

control of the defendant rather than being equally available to both parties"; (3) the witness' absence must not be satisfactorily explained;[3] and (4) application of the doctrine must not shift the burden of proof. *Id.* at 598-99.

*Blair* illustrates when the missing witness inference is permissible. The defendant was arrested for unlawful delivery of a controlled substance; after searching the defendant's home, officers found slips of papers with handwritten names and notations that appeared to represent his drug transactions. *Blair*, 117 Wn.2d at 481-83. The defendant testified most of the entries represented personal loans or money won playing cards, but he called only one witness listed on the slips of paper to corroborate this claim. *Id.* at 482-83. In finding the State properly argued the missing witness doctrine during closing, the Washington Supreme Court held the comments did not infringe on the defendant's constitutional rights or shift the burden of proof because the witnesses were all personal and business acquaintances known only to the defendant, listed solely by first name, and were peculiarly available to him. *Id.* at 490-92.

By contrast, *Montgomery* illustrates a situation where the trial court erred in giving a missing witness instruction. *Montgomery*, 163 Wn.2d at 599. Despite being arrested for possession of pseudoephedrine with intent to manufacture methamphetamine, the defendant testified he purchased the ingredients for innocent reasons. *Id.* at 584-85, 587. The defendant said his grandson and his landlord could corroborate his explanation; neither testified. *Id.* at 596-97. On cross-examination, the

---

[3] Although the State provides an argument concerning this element, Mr. Fowler does not. Thus, for purposes of this appeal, it is assumed this element is met.

12

State elicited the information the grandson could not testify because he was in school. *Id.* at 597. This was an adequate explanation for the grandson's absence. *Id.* at 599. As to the landlord, the court found the landlord was not peculiarly within the defendant's control. *Id.*

As it relates to the first element, Ms. Boyle's testimony would have been material and not cumulative. Mr. Fowler testified on direct Ms. Boyle was present in the apartment the night of the incident. In refuting A.G.'s testimony that it was Mr. Fowler's act of unzipping her pants that awoke her, he testified Ms. Boyle's dog woke up A.G. After taking the dog off of A.G., he called for Ms. Boyle, who came out of the kitchen. Ms. Boyle and Mr. Fowler then talked about this for five minutes before she put the dog away. Thus, according to Mr. Fowler, the sole thing that happened to A.G. that night was the dog jumped on her. Ms. Boyle was allegedly in the apartment and retrieved the dog. Contrary to Mr. Fowler's assertions, her testimony would not have been limited to whether or not a dog was in the apartment that night; rather, she could have corroborated Mr. Fowler's version of events that the dog jumping on A.G. woke her up rather than Mr. Fowler unzipping her pants.

Regarding the second element, Mr. Fowler asserts Ms. Boyle was not under his control. He points to the following as support: (1) the State knew about Ms. Boyle after A.G. mentioned Mr. Fowler's roommate during her pre-trial interview, (2) the State got Ms. Boyle's name from the apartment manager, and (3) the apartment manager had a forwarding address for Ms. Boyle. Mr. Fowler reads this element too narrowly.

13

Whether a witness is peculiarly available to one party does not mean the witness is in court or is subject to the subpoena power. *Blair*, 117 Wn.2d at 490. Rather, a witness is peculiarly available to one party if there is

> such a community of interest between the party and the witness, or the party [has] so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that [her] testimony would have been damaging.

*State v. Davis*, 73 Wn.2d 271, 277, 438 P.2d 185 (1968), *overruled on other grounds by State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012). "The rationale for this requirement is that a party will likely call as a witness one who is bound to him by ties of affection or interest unless the testimony will be adverse, and that a party with a close connection to a potential witness will be more likely to determine in advance what the testimony would be." *Blair*, 117 Wn.2d at 490. Thus, availability turns on the relationship between the party and the witness. *State v. Cheatam*, 150 Wn.2d 626, 653, 81 P.3d 830 (2003).

While the State knew about Ms. Boyle, they had no reason to suspect she was present at the apartment during the incident until Mr. Fowler testified at trial. Mr. Fowler never mentioned her or the dog to the police or the State until this time. The State had no motivation to call Ms. Boyle as a witness, despite the fact the State certainly could have subpoenaed her. Rather, there was a community of interest between Mr. Fowler and Ms. Boyle. While Mr. Fowler testified he did not know where she was, he did have

14

a superior opportunity for knowledge of her as a witness. Ms. Boyle was particularly available to Mr. Fowler.

Lastly, Mr. Fowler argues the missing witness instruction shifted the burden of proof. But nothing in the State's comments said Mr. Fowler had to present any proof on the question of his innocence, and the State was entitled to argue the reasonable inference from the evidence presented. Mr. Fowler testified specifically about Ms. Boyle's presence and her dog. He had a personal relationship with Ms. Boyle. During closing, Mr. Fowler reminded the jury of the State's burden of proof. Moreover, the jury was instructed counsel's comments are not evidence, the State had the burden of proving each element of each crime beyond a reasonable doubt, and Mr. Fowler was presumed innocent. We conclude the missing witness instruction was warranted.

Even if the missing witness jury instruction was not warranted, it was harmless beyond a reasonable doubt. Improper jury instructions can be harmless error if the jury was properly instructed on the State's burden. *Montgomery*, 163 Wn.2d at 600. "'An erroneous instruction is harmless if, from the record in [the] case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002)) (finding error where jury was presented with two competing interpretations of undisputed events and what those events meant about defendant's intent and the State repeatedly referenced the missing witnesses).

15

Both A.G. and A.C.G. testified about what happened to them. The child interviewer from the prosecutor's office independently testified and verified the girls' version of events remained consistent throughout the entire trial period. There was no dispute the girls had been alone with Mr. Fowler. There was no dispute the girls spent the night with Mr. Fowler. During closing, the State did not focus on the missing witness inference; rather the State referenced Mr. Fowler's failure to call Ms. Boyle when discussing Mr. Fowler's credibility and then briefly argued the inference in its rebuttal. Moreover, the jury was told not to apply the inference unless certain conditions were met; if the evidence was not all that critical, the jury would not apply the inference. And contrary to Mr. Fowler's contention, as discussed above, the instruction did not constitute a judicial comment on any witnesses' credibility.

## C. LFOs

The issue is whether the trial court erred by imposing $1,135 in LFOs for the costs of court-appointed counsel without inquiring into Mr. Fowler's financial circumstances. Despite not objecting at trial, Mr. Fowler contends we should review his claim because he mounts a constitutional and statutory challenge: the trial court's action impermissibly chills the exercise of his Sixth Amendment right to counsel. "A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *State v. Blazina*, No. 89028-5, slip op. at 4 (Wash. Mar. 12, 2015). We exercise our discretion and decline review because no

16

extraordinary facts are shown. *See State v. Duncan*, 180 Wn. App. 245, 255, 327 P.3d 699 (2014).

RCW 10.01.160(1) provides a trial court may require a defendant pay costs, including costs of court-appointed counsel. *See State v. Wimbs*, 74 Wn. App. 511, 516, 874 P.2d 193 (1994). Statutes are presumed constitutional, and the party challenging a statute's constitutionality, here Mr. Fowler, must show the statute's unconstitutionality beyond a reasonable doubt. *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997).

In *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992), the Washington Supreme Court held formal findings of fact on ability to pay are not required for recoupment of costs under RCW 10.01.160. The court stated a sentencing court has discretion to impose repayment obligations, and a defendant is protected from abuse of that discretion by RCW 10.01.160's directive that ability to pay be considered and provision for modification of imposed LFOs if a defendant cannot pay. *Id.* Similarly in *Blank*, the Washington Supreme Court reconsidered "whether, *prior* to including a repayment obligation in defendant's judgment and sentence, it is constitutionally necessary that there be an inquiry into the defendant's ability to pay, his or her financial resources, and whether there is no likelihood that defendant's indigency will end." *Blank*, 131 Wn.2d at 239 (reconsidering in light of RCW 10.73.160 which provides for recoupment of appellate costs from a convicted defendant). In holding the Constitution does not require an inquiry into ability to pay at the time of sentencing, the *Blank* court

17

relied on (1) the holding in *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974), and (2) case law holding mandatory monetary assessments may be imposed against indigent defendants at sentencing without any per se constitutional violations. *Blank*, 131 Wn.2d at 239-42. Neither *Blank* nor *Curry* have been overruled, and Mr. Fowler does not provide any persuasive argument to the contrary.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.