# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 75337-1-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SAMUEL KENNETH MCDONOUGH, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 2, 2018 |
| | ) | |

DWYER, J. — Samuel McDonough appeals from the judgment entered on a jury's verdict finding him guilty of residential burglary. McDonough contends that the trial court erred by instructing the jury that it could infer his intent to commit theft from his unlawful entry into a house. McDonough also contends that the sentencing court erred by ruling that two prior convictions were not crimes involving the "same criminal conduct" when calculating his offender score. Finally, McDonough raises 10 additional claims of error in his statement of additional grounds. Finding no error, we affirm.

I

At approximately 10:00 a.m. on October 19, 2015, Samuel McDonough broke into a house in north Seattle by climbing through a basement window. Tessa Roberts and Matthew Swain were sleeping in separate rooms in the basement when McDonough broke into the house.

Swain was the first person to see McDonough. Swain was returning to his room after using the bathroom. Swain noticed that McDonough was standing beside the basement bookshelf and that McDonough appeared to be surprised when Swain saw him. Swain thought that McDonough must have been a friend of another resident of the house, so he did not take any action regarding McDonough's presence before returning to his room.

Minutes later, Roberts exited her room and saw McDonough climbing out of the basement window. After watching McDonough run away, Roberts immediately called the police. Both Swain and Roberts observed that McDonough was wearing dark clothing with a dark sweatshirt and a backpack.

The police soon found McDonough hiding in a shed behind a neighboring house. Upon being discovered, McDonough told the officers that his given name was Shawn instead of Samuel. When asked if he was supposed to be in the shed, McDonough replied that he was not. McDonough was not wearing a sweatshirt or a backpack when the police found him, and the two items were never found. The police officers then asked Swain if he could identify McDonough. Swain positively identified McDonough as the man who he saw in the basement of the house.

At the house, Roberts found wet footprints leading from the basement window into the house, wet footprints on the back deck of the house, and wet footprints leading to the front door of the house. Additionally, Roberts noticed that board games and other "knickknacks" on the basement bookshelf had been shuffled around. Finally, Roberts discovered that someone had rifled through her car, which was parked outside the house, and that some items were missing.

McDonough was charged and convicted of residential burglary. He now appeals.

## II

McDonough first contends that the trial court erred by instructing the jury that it could infer his intent to commit a crime inside Roberts' house. This is so, McDonough asserts, because the instruction violated his due process rights by relieving the prosecution of the burden of proving the intent element of residential burglary beyond a reasonable doubt.

At trial, the State proposed a pattern jury instruction:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Instruction 11; 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 60.05 (4th ed. 2016) (WPIC). McDonough objected to the proposed instruction, arguing that there was no evidence of his intent to commit theft when he entered the house because nothing from the house was

found in his possession upon his arrest. Nevertheless, the trial court so instructed the jury.

We review the constitutionality of permissive inference instructions under the "more likely than not" standard. State v. Hanna, 123 Wn.2d 704, 712, 871 P.2d 135 (1994). "Whether an inference meets this standard must be determined on a case-by-case basis in light of the particular evidence presented to the jury in each case." Hanna, 123 Wn.2d at 712.

The due process clauses of the federal and state constitutions require the government to prove every element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. To prove residential burglary, the State must establish that the defendant (1) entered or remained in the dwelling, (2) with the intent to commit a crime against a person or property therein. RCW 9A.52.025. The State may use evidentiary devices, such as inferences, to assist in meeting its burden of proof. Hanna, 123 Wn.2d at 710.

Washington law permits the intent to commit a crime to be inferred when a person enters or remains unlawfully in a building and satisfactory evidence has been presented to the trier of fact. RCW 9A.52.040. Moreover, our Supreme Court has held that WPIC 60.05 is constitutional because the language is clearly discretionary, allowing the trier of fact to decide whether to accept or reject the inference. State v. Brunson, 128 Wn.2d 98, 105-06, 905 P.2d 346 (1995). "'[W]hen an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow more likely

than not from proof of the basic fact.'" Brunson, 128 Wn.2d at 107 (internal quotation marks omitted) (quoting Hanna, 123 Wn.2d at 710).

Here, McDonough's actions indicate that he was more likely than not intending to commit theft by stealing items when he entered Roberts' house. McDonough entered and exited the house through a basement window, he was wearing dark clothing, he ran away when he was discovered by people in the house, he was found by police hiding in a shed behind a neighbor's house, he gave police a false name when he was discovered, and his backpack and jacket were never found. Moreover, Roberts found multiple wet footprints leading up to the house, she noticed that the objects on the basement bookshelf had been shuffled around, and she discovered that someone had stolen some items from her car parked outside the house.

The evidence presented at trial suggests that McDonough was more likely than not intending to commit theft by stealing items from Roberts' house when he entered through the basement window. Accordingly, the permissive inference jury instruction was appropriately given.

There was no error.

III

McDonough next contends that the sentencing court abused its discretion by ruling that his two prior convictions for burglary in the second degree and theft of a motor vehicle did not involve the "same criminal conduct" for the purposes of calculating his offender score. This is so, McDonough asserts, because he had

the same intent when he committed the prior burglary and the prior theft of a motor vehicle. We disagree.

Our Supreme Court has "repeatedly observed that a court's determination of same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law." State v. Aldana Graciano, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). When calculating an offender score, the sentencing court abuses its discretion by arriving at a contrary result "when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct.'" Aldana Graciano, 176 Wn.2d at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." Aldana Graciano, 176 Wn.2d at 538.

"Two crimes manifest the 'same criminal conduct' only if they 'require the same criminal intent, are committed at the same time and place, and involve the same victim.'" Aldana Graciano, 176 Wn.2d at 540 (quoting RCW 9.94A.589(1)(a)). "If the defendant fails to prove any element under the statute, the crimes are not the 'same criminal conduct.'" Aldana Graciano, 176 Wn.2d at 540 (citing State v. Maxfield, 125 Wn.2d 378, 402, 886 P.2d 123 (1994)). "[I]n deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other." State v. Dunaway, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

Here, McDonough entered onto Pier 69 at the Seattle waterfront in the early morning of December 1, 2013 by scaling a fence. McDonough subsequently boarded the Victoria Clipper IV, a 480 ton, 40 meter long cruise vessel. Onboard, McDonough gathered various items, including several bottles of perfume, multiple bottles of alcohol, and a duffel bag. He also discovered that the keys had been left in the vessel's ignition. McDonough then decided to sail the Victoria Clipper IV into Puget Sound.

The vessel lost power in the middle of Puget Sound, at which point Seattle police were able to board the vessel and apprehend McDonough. After he was apprehended, McDonough told authorities that he wanted to go to West Seattle or the Duwamish River to "ditch the boat." McDonough later told police that he wanted to go to Victoria, Canada. After pleading guilty to burglary and theft of a motor vehicle, McDonough served both sentences concurrently.

At sentencing in the present case, McDonough argued that the prior burglary and the prior theft of a motor vehicle involving the Victoria Clipper IV should be considered the "same criminal conduct" for the purposes of calculating his offender score. The sentencing court rejected McDonough's argument, finding that it was most likely that McDonough's intent changed from when he unlawfully entered Pier 69 to steal items, to when he decided to steal the Victoria Clipper IV itself.

The record suggests two possible interpretations. The first is that McDonough entered onto Pier 69 with the intent of stealing items from the Victoria Clipper IV and the vessel itself. The second is that he entered onto Pier

69 in order to steal items from the vessel, but decided to steal the vessel itself upon finding that such a theft was possible. The record adequately supports either conclusion. McDonough did not convince the court that his theory was more likely true.

The sentencing court did not abuse its discretion by finding that McDonough's two prior convictions for burglary in the second degree and theft of a motor vehicle did not involve the "same criminal conduct."[1]

IV

McDonough makes a number of contentions in his statement of additional grounds. None are availing.

McDonough first asks us to review hand-written motions that he submitted to the trial court. We do not review motions filed in the trial court but merely "incorporate[d] by reference" in briefing to this court. US West Commc'ns, Inc. v. Util. & Transp. Comm'n, 134 Wn.2d 74, 112, 949 P.2d 1337 (1997).

McDonough next contends that the information charging him was deficient because it did not include Roberts' house address. Our Supreme Court has held

---

[1] In two recent decisions involving defendants convicted of child rape and incest against the same victim, our Supreme Court has held that the test for determining intent for a "same criminal conduct" analysis is whether the two crimes have the same statutory intent. See State v. Chenoweth, 185 Wn.2d 218, 370 P.3d 6 (2016); State v. Bobenhouse, 166 Wn.2d 881, 214 P.3d 907 (2009). We do not apply that test here for two reasons. First, the test for whether two crimes involved the same intent for a "same criminal conduct" analysis, as articulated in Dunaway, has not been expressly overruled. 109 Wn.2d at 215; see also State v. Haddock, 141 Wn.2d 103, 3 P.3d 733 (2000); State v. Tili, 139 Wn.2d 107, 985 P.2d 365 (1999); State v. Garza-Villarreal, 123 Wn.2d 42, 864 P.2d 1378 (1993); State v. Lessley, 118 Wn.2d 773, 827 P.2d 996 (1992); State v. Lewis, 115 Wn.2d 294, 797 P.2d 1141 (1990); State v. Burns, 114 Wn.2d 314, 788 P.2d 531 (1990). Second, the test that the court used in Chenoweth, 185 Wn.2d 218, and Bobenhouse, 166 Wn.2d 881, has so far been limited to crimes involving child rape and incest. Chenoweth, 185 Wn.2d at 224 (holding that "the Legislature intended to punish incest and rape as separate offenses, even though committed by a single act" (quoting State v. Calle, 125 Wn.2d 769, 780, 888 P.2d 155 (1995))).

that, pursuant to CrR 2.1(d), an information may be amended at any time before a verdict or finding when the substantial rights of the defendant are not prejudiced. State v. Eaton, 164 Wn.2d 461, 466, 191 P.3d 1270 (2008) (citing State v. Barnes, 146 Wn.2d 74, 81-82, 43 P.3d 490 (2002)). Here, the record shows that the information was amended to include Roberts' house address before trial and that McDonough had been aware of the house address since his arraignment.

McDonough next raises four evidentiary contentions. First, McDonough asserts that the witness identification of him at trial as the intruder was not sufficient to support a conviction. But witness credibility determinations are for the trier of fact and are not subject to review. State v. Cantu, 156 Wn.2d 819, 831, 132 P.3d 725 (2006). Second, McDonough asserts that his case was maliciously prosecuted because there was not enough evidence to convict him. However, sufficient evidence of his guilt was presented. See State v. Salinas, 119 Wn.2d 192, 829 P.2d 1068 (1992). Third, McDonough asserts that there was not probable cause to prove that he intended to commit theft when he unlawfully entered Roberts' house. As stated, sufficient evidence was admitted at trial to support the jury's finding. Finally, McDonough asserts that trial court error resulted in "[n]ot allowing the jury the police radio-call-out print-out in order to synchronize the tapes." The decision to admit evidence lies within the trial court's discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). McDonough fails to provide an argument showing that the trial court abused its

discretion when it refused to admit the "police radio-call-out print-out." No entitlement to appellate relief is shown.

McDonough next raises three contentions regarding his arrest. McDonough asserts that charges against him were not properly filed, that he was not read his Miranda[2] rights, and that there was not probable cause to arrest him. The record shows that McDonough was properly charged by information, that McDonough was read his Miranda rights, and that a warrant was issued for McDonough's arrest before he was arrested.[3] The warrant was based upon a finding of probable cause.

McDonough next raises two procedural contentions. First, McDonough asserts that the prosecutor interposed excessive objections during McDonough's questioning of witnesses at trial. Second, McDonough asserts that he was denied the opportunity to be the last party to speak to the jury because the prosecution offered a rebuttal closing argument. Neither claim has merit. Both objections and rebuttal closing argument are a proper part of a trial. Furthermore, McDonough fails to offer any evidence that the rulings on the State's objections were improper or that the content of the State's rebuttal closing argument was improper. These claims warrant no relief.

McDonough raises two final contentions in his statement of additional grounds. First, McDonough asserts that the trial court erred by "not allowing me

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[3] McDonough was initially arrested after he unlawfully entered Roberts' house on October 19, 2015. A probable cause hearing was held shortly after his first arrest. McDonough was then released after being held for 48 hours. The State later filed formal charges against McDonough on January 4, 2016. The arrest warrant was issued when formal charges were filed.

to use my own laptop." The record shows that the laptop computer belonged to the jail. The record further shows that the jail does not permit inmates to bring laptop computers to court for security reasons. McDonough makes no attempt to demonstrate that the trial court erred by conducting trial in accordance with this security measure. Finally, McDonough asserts that the prosecution "screw[ed]" him "every which way." McDonough's assertion is nothing more than an acrimonious statement directed at the prosecution and does not set forth an argument for appellate review. Accordingly, McDonough fails to establish a basis for appellate relief in his statement of additional grounds.

Affirmed.

We concur: